PARKER 86TH ASSOCIATES et al., Appellants-Respondents, v CITY OF NEW YORK et al., Respondents-Appellants.

First Department, April 26, 1983

APPEARANCES OF COUNSEL

*Gary Schuller* of counsel (*Leonard Olarsch* and *Joseph A. Vogel* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents-appellants.

*Alan Kolod* of counsel (*Charles G. Moerdler, David S. Welkowitz* and *Naomi Siegel* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for appellants-respondents.

### OPINION OF THE COURT

BLOOM, J.

In this uncertified class action plaintiffs seek a declaration that Local Law No. 29 of 1982 of the City of New York is unconstitutional, void and unenforceable, enjoining its enforcement and requiring the city to refund to members of the plaintiff class all revenues alleged to having been

illegally obtained from them by the city pursuant to the local law. On October 5, 1982, the day following the joinder of issue defendants moved for summary judgment declaring that section 2 of Local Law No. 29 is constitutional and valid in all respects. Plaintiffs cross-moved for summary judgment declaring that the local law is invalid and unconstitutional, determining that the action may be maintained as a class action under CPLR article 9, and seeking a refund on behalf of the entire class of the taxes alleged to have been illegally paid.

Special Term granted plaintiffs' motion to the extent of declaring Local Law No. 29 of 1982 unconstitutional as in violation of article IX (§ 2, subd [c], par [ii], cl [8]) of the Constitution of the State of New York. However, it failed to grant certification of class status to plaintiffs and did not pass on the demand for a refund of the taxes paid. Both sides appeal; defendants from so much of the judgment as declared Local Law No. 29 unconstitutional and plaintiffs from so much thereof as denied them class action certification and failed to order a refund of the taxes claimed to have been illegally paid. We are in disagreement with the conclusion reached by Special Term. Accordingly, we reverse and grant defendants' motion for summary judgment and declare that Local Law No. 29 of 1982 of the City of New York, and particularly section 2 thereof, is a valid and constitutional exercise of the taxing power of the city.

## I

This appeal had its genesis in the now repealed section 306 of the Real Property Tax Law which required that "[a]ll real property in each assessing unit shall be assessed at the full value thereof". Despite the ancient history of the statute, which traces its beginnings to a 1788 statute adopted by our State Legislature (L 1788, ch 65), the general rule had been to value real estate for assessment purposes at a fraction of its true value. However, there was considerable lack of uniformity in the holdings of the courts with respect to the validity of assessments based upon a fraction of the value of the real property (compare *Van Rensselaer v Whitbeck,* 7 NY 517, and *People ex rel. Board of Supervisors of Westchester County v Fowler,* 55 NY 252, with *C.H.O.B. Assoc. v Board of Assessors of*

*County of Nassau,* 45 Misc 2d 184, affd 22 AD2d 1015, affd 16 NY2d 779; *People ex rel. Yaras v Kinnaw,* 303 NY 224; *Nicolette v Village of Clyde,* 34 AD2d 202; *Matter of Connolly v Board of Assessors of County of Nassau,* 32 AD2d 106). Not until *Matter of Hellerstein v Assessor of Town of Islip* (37 NY2d 1) was the issue finally set to rest by a sharply divided Court of Appeals. In that case fractional assessments were outlawed. However, recognizing that confusion and disruption of existing procedures would attend assessment at full value, the court allowed until December 31, 1976, approximately a year and a half after the decision, before compliance with its mandate would be required.

After a series of legislatively imposed moratoria (L 1977, ch 888; L 1981, ch 259) and the establishment of a temporary State commission to study the problem and to make recommendations with respect thereto (L 1977, ch 889) the problems attendant upon *Hellerstein* (*supra*) finally reached resolution in the adoption by the State Legislature of chapter 1057 of the Laws of 1981 which became effective December 3, 1981 upon override by the Legislature of the veto of the Governor. Section 1 repealed section 306 of the Real Property Tax Law and enacted, in its place, a new section 305 which authorized the continuance in effect of existing methods of assessment. It further provided that "[a]ll real property in each assessing unit shall be assessed at a uniform percentage of value (fractional assessment) except that, if the administrative code of a city with a population of one million or more permitted, prior to January first, nineteen hundred eighty-one, a classified assessment standard, such standard shall govern unless such city by local law shall elect to be governed by the provisions of this section". It also authorized assessing units which had adopted the full value standard by reason of revaluation under *Hellerstein* to adopt a level of assessment in accord with the new section 305.

Section 2 of chapter 1057 enacted a wholly new article 18 of the Real Property Tax Law. Section 1802 subdivided real property in a "special assessing unit", defined as "an assessing unit with a population of one million or more" under subdivision (a) of section 1801, into four categories.

Class one is defined as all one, two and three-family real property used primarily for residential purposes. Included in class one is property held in co-operative or condominium form. Class two embraces all other residential real property except commercial property used primarily for dwelling purposes. Class three is limited to utility real property while class four covers all other real property not included in the foregoing categories. Section 1803 provides for the method of apportioning assessment among the several classes and the manner of adjustment thereof.

On May 8, 1979, some two and one-half years prior to the adoption of chapter 1057, the Finance Committee of the City Council of the City of New York began considering means of increasing the cash flow of the city without increasing the tax burden on its residents. One of the means suggested jointly by the city's Office of Management and Budget (OMB) and the Finance Commissioner was the advancement of the payment of the real estate tax from quarterly payments then in effect to semiannual payments. Estimates complied by OMB indicated that this acceleration of payment would provide an additional cash flow of some $35,000,000. Coupled with an interest rate of 12% "on the expense side" it was estimated that this $35,000,000 would generate an additional $19,000,000 benefitting the city annually by an aggregate total of $54,000,000. Additionally, there would be a substantial savings in mailing, handling and processing costs.

The recommendation led, in 1979, to the introduction in the city council of a proposal that *all* real estate taxes be accelerated so that collection would be on a semiannual rather than a quarterly basis. Because of the opposition the proposal languished in the finance committee. Finally in 1982 a compromise was struck. Recognizing that the change would be particularly onerous for property owners who would find it difficult to fund the prepayment of the initial installment of a semiannual tax, the finance committee proposed that the tax on *all* real property with an assessed valuation of $30,000 or less and on real property held in co-operative form of ownership with an assessed value of $30,000 or less (computed by dividing the number of dwelling units into the total assessment for the real

property) would be payable in four installments, due July 1, October 1, January 1, and April 1, in each year. On all other property the tax would be payable in three installments for the fiscal year commencing July, 1982 and thereafter, in two installments. These proposals, embodied in Local Law No. 29 of 1982, were adopted by the city council on May 25, 1982 and approved by the Mayor on June 7, 1982. The local law became effective immediately upon its adoption.

Special Term held that the subdivision of real property by Local Law No. 29 into classes different from those contained in section 1802 permitted some of the taxpayers placed in the same class by section 1802 to pay their taxes quarterly in advance while requiring others to pay their taxes semiannually in advance, and thereby deprived those who were required to pay semiannually the use of their money for some period of time. This resulted in an inequality of tax burden. It further read article 18 as requiring that all property in each class be taxed at the same rate. Accordingly, it concluded that Local Law No. 29 was in conflict with article 18, a general law, and, by reason thereof, it transgressed the limitation imposed by article IX (§ 2, subd [c], par [ii], cl [8]) of the State Constitution on the home rule powers of the city. By consequence, it held that Local Law No. 29 was unconstitutional.

## II

We are of the view that the confusion of the categories fixed by the State Legislature for *assessment* purposes with the classes fixed by the city council for *payment* of the tax led to an erroneous result. We know of no case decided by the courts of this State, nor has any been brought to our attention, which deals with the precise issue now before us. However, the problem has been before courts in other jurisdictions, some perhaps in a different context. These holdings persuade us that a distinction between assessment and the manner of the collection of the taxes is proper and controlling in the circumstances of this case.

More than a century ago we were taught that: "The constitution does not require uniformity in the manner of collection. Uniformity in the assessment is all it demands.

When assessed the tax may be collected in the manner the law shall provide; and this may be varied to suit the necessities of each case". (*Tappan v Merchants' Nat. Bank,* 19 Wall [86 US] 490, 505.) More recently, in a case dealing with real property taxes, the Texas Court of Civil Appeals phrased the principle in the following terms: "The rule seems to be well established that if the original assessment rolls are legal in every respect and property has been equally and uniformly assessed, then such rolls will not be rendered illegal and void by the methods used in collecting taxes thereon". (*Edinburg Improvement Assn. v City of Edinburg,* 191 SW2d 752, 754; to the same effect see 16 McQuillin, Municipal Corporations [3d ed, rev], § 44.19; 1 Cooley, Law of Taxation [4th ed], §§ 304-308; *State ex rel. Conservation Comm. of State of Mo. v LePage,* 566 SW2d 208 [Mo Supreme Ct]; *Biggers Bros. v Jones,* 284 NC 600; *Hammett v Kansas City,* 351 Mo 192; *Napier v City of Springfield,* 304 Mass 174; *Wheir v Dye,* 105 Mont 347; *Matter of Taxes Delinquent, Washington County,* 197 Minn 266, app dsmd *sub nom. Torinus v Johnson,* 299 US 508; *Mississippi State Tax Comm. v Flora Drug Co.,* 167 Miss 1; *Missouri, Kan. & Tex. Trust Co. v Smart,* 51 La Ann 416.)

It is not disputed that the new article 18 of the Real Property Tax Law deals exclusively with the method of assessment. Indeed, it is not disputed that it was enacted to overcome the problems posed by *Hellerstein (supra).* It is equally undisputed that section 2 of Local Law No. 29 deals exclusively with the manner of payment. While it creates new and different classes for purposes of payment, it in no way affects the assessment categories specified in section 1802. There is, therefore, no conflict between them. It follows that there is no violation of article IX (§ 2, subd [c], par [ii], cl [8]) of the State Constitution, and plaintiffs' confusion of assessment with the times at which the tax is paid does not and cannot alter the different purposes of the article 18 and Local Law No. 29; nor can it alter the fact that plaintiffs' properties and those in the $30,000 or less class are assessed and taxed at the same rate, albeit the amount of the tax may be payable at different times.

## III

Plaintiffs' second line of attack on Local Law No. 29 is

that the deprivation of the moneys represented by the tax for a period of six months constitutes a deprivation of equal protection of the law in violation of the Fourteenth Article of Amendment to the Federal Constitution. To this the short answer is that in matters pertaining to the public treasury the courts do not review legislative wisdom or the propriety of its decisions (*Matter of Tolub v Evans*, 58 NY2d 1). "The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination" (*Lehnhausen v Lake Shore Auto Parts Co.*, 410 US 356, 359). The Fourteenth Amendment "imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation" (*Allied Stores of Ohio v Bowers*, 358 US 522, 526; *Lehnhausen v Lake Shore Auto Parts Co.*, 410 US 356, 359, *supra*). "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law" (*Brown-Forman Co. v Kentucky*, 217 US 563, 573; *Allied Stores of Ohio v Bowers*, 358 US 522, 530, *supra*). Thus, "the scope of review is to determine whether a rational basis exists for the classification enacted by the [City Council]" (*Matter of Tolub v Evans*, 58 NY2d 1, 8, *supra*). In so doing we are required to bear in mind that equal protection means no more than approximate equality. There is nothing in the Constitution which mandates that equality be calibrated with mathematical exactitude (*Dandridge v Williams*, 397 US 471).

While Local Law No. 29 does not contain any legislative findings, the minutes of the meetings of the finance committee of the city council give us an insight into the thinking of its members. With that as a predicate, we cannot, without substituting our judgment for theirs — an undertaking which, constitutionally, we are forbidden to do — say that their action was capricious or palpably arbitrary, or that the classification made by them for tax payment purpose was the product of invidious discrimination. Rather, we are impelled to the conclusion that there

was a rational basis for the classification embodied in Local Law No. 29.

## IV

In light of this determination it becomes unnecessary for us to concern ourselves with plaintiffs' request for class certification and for refund of the real estate taxes alleged to have been illegally paid.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (WALLACH, J.), entered November 16, 1982, is reversed on the law; the defendants' motion for summary judgment granted and plaintiffs' cross motion for summary judgment denied; and Local Law No. 29 of 1982 of the City of New York, and more particularly section 2 thereof, is declared to be a valid and constitutional exercise of the taxing power of the City of New York, all without costs.

KUPFERMAN, J. P., SULLIVAN, SILVERMAN and MILONAS, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on November 16, 1982, unanimously reversed, on the law, defendants' motion for summary judgment granted and plaintiffs' cross motion for summary judgment denied; and Local Law No. 29 of 1982 of the City of New York, and more particularly section 2 thereof, is declared to be a valid and constitutional exercise of the taxing power of the City of New York, all without costs and without disbursements.