OPINION OF THE COURT
Ira Gammerman, J.
In this pharmaceutical product liability action, plaintiff *483 Mindy Hymdwitz alleges that she developed cancer as a result of prenatal exposure to diethylstilbestrol (DES), a synthetic estrogen taken by her mother in 1954 during pregnancy to prevent possible miscarriage.
Plaintiff was born on December 11, 1954. The cancerous condition for which plaintiff seeks damages allegedly appeared in 1979. Under the Statute of Limitations then applicable (CPLR 208, 214), plaintiff was barred from commencing suit in December 1975 (three years after reaching the age of majority). Plaintiff brings this action, however, under the provisions of the 1986 revival statute (L 1986, ch 682, § 4).
Plaintiff moves pursuant to CPLR 3212 to strike affirmative defenses raised by some defendants challenging the constitutionality of the revival statute and alleging that the action is time barred under the Statute of Limitations otherwise applicable.
Defendants Eli Lilly and Co. (Lilly), Abbott Laboratories (Abbott) and the Upjohn Company (Upjohn) seek summary judgment and dismissal of the complaint as barred by the Statute of Limitations absent the availability of the allegedly unconstitutional revival statute.
Defendant E. R. Squibb & Sons (Squibb) opposes the relief sought by plaintiff and contends that before the issue of the constitutionality of the revival statute is determined further discovery is required on the issue of whether such extraordinary circumstances exist in this case to justify invocation of the statute which Squibb also contends is unconstitutional. (Squibb further urges that discovery is needed to determine whether plaintiff can identify the manufacturer of the DES actually taken by her mother.)
The revival portion of the 1986 tort reform legislation provides that actions seeking damages for personal injury, property damage or death caused by the latent effects of exposure to five substances (DEC, asbestos, tungsten-carbide, chlordane and polyvinylchloride) that were time barred or dismissed, as of the effective date of the statute, may be instituted "within one year from the effective date of this act”. (L 1986, ch 682, § 4.) The statute was passed on July 1, 1986 and was signed by the Governor on July 30, 1986.
In addition to the revival provision for the five specified substances (§ 4), the new tort reform legislation adopted a general discovery-based Statute of Limitations for injuries caused by latent effects of exposure to any substance (CPLR 214-c [2]). Under subdivision (2), a victim may assert a cause of action within three years from the date the injury was or should have been discovered.
*484 The provision for revival of claims (§ 4) and the discovery-based Statute of Limitations (L 1986, ch 682, § 2) were intended by the Legislature to remedy the perceived injustice caused by the application of CPLR 214, 208 (the exposure-based Statute of Limitations) and to provide legal recourse for injuries caused by latent effects of toxic substances. Both provisions were enacted to remedy the failure of the old statute to recognize that such injuries may not appear until years after exposure, long after the expiration of the period within which actions may be instituted.
Legislative history indicates that the five named substances were distinguished from other toxic substances (§ 2) as a result of compromise between the Assembly (which had voted to permit revival for all toxic substances) and the Senate which wanted to limit revival. The Legislature ultimately limited revival based upon the existence of an identifiable group affected and the resulting ability to predict the future costs of such revival. The Legislature was apparently concerned that under a broader revival statute, the large number of unknown victims would create unpredictable risks and costs.
Defendants challenge the revival statute on equal protection and due process grounds, arguing that the statute is the result of an arbitrary and irrational political arrangement arrived at without rational guidelines of scientific certainty or public necessity. Defendants further argue that the legislative concern for limiting the number of potential claimants and costs is not related to the ostensible objective of the legislation, i.e., to allow victims of latent injuries to maintain actions. Defendants contend that the revival provision must be stricken on equal protection grounds, as an underinclusive random penalty without scientific basis, on five arbitrarily chosen substances and their manufacturers. It is contended that the prior exposure Statute of Limitations or the new three-year discovery-based provision would be more than adequate for victims of the five specified substances.
Defendant Lilly urges that generally, chemical injury claims accrue at the time of exposure (here, in útero). Under the three-year exposure-based Statute of Limitations (tolled to the age of majority) claimants could bring suit until age 21. Lilly contends that most DES patients develop cancer by age 19, and, therefore, their claims would not be time barred before becoming aware of their injuries.
Defendants also claim a violation of the Due Process Clause, in that the statute constitutes an arbitrary deprivation of the substantive property right to rely upon the absence of claims. *485 Defendants assert that dismissal (or the passage of the applicable time bar) gives rise to substantive property rights which as a general rule may not be abrogated and that the exceptional circumstances to permit revival are not present (see, Gallewski v Hentz & Co., 301 NY 164).
Based upon the impact upon what they allege are substantive or property rights, defendants urge the applicability of strict scrutiny or an intermediate standard of review rather than a rational basis examination.
As a general rule, State Statutes of Limitation reviving time-barred actions are not violative of due process. Statutes of Limitation represent a public policy statement with respect to the privilege to litigate. "[T]he history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control” (Chase Sec. Corp. v Donaldson, 325 US 304, 314). The expiration of the applicable time period does not eliminate a cause of action but rather suspends the court’s power to grant a remedy (Hulbert v Clark, 128 NY 295). In other words, Statutes of Limitation relate to the availability of a remedy and not to the destruction of any fundamental right.
In the past, New York courts have upheld the power of the State Legislature to extend or revive time-barred claims. In Gallewski v Hentz & Co. (301 NY 164, 174, supra), the court found that a revival statute is not necessarily void as a taking of property without due process. The court stated (at 174) that "[T]he Legislature may constitutionally revive a personal cause of action where the circumstances are exceptional and are such as to satisfy the court that serious injustice would result to plaintiffs not guilty of any fault if the intention of the Legislature were not effected.”
In Matter of McCann v Walsh Constr. Co. (282 App Div 444, affd 306 NY 904), the court found that the Legislature acted within the limits of the Constitution in extending the time period within which victims of caisson disease could seek redress. The Legislature sought to remedy the injustice caused to victims of a disease which in many cases did not produce symptoms until after the period for filing workmen’s compensation claims has passed. The court found that under the circumstances, the Legislature, by extending the time within which to institute a claim, was merely complying with the simple demands of justice.
A similar due process challenge was raised by manufacturers of Agent Orange regarding the constitutionality of the recent statute extending the time within which victims of *486 dioxin could sue in New York (CPLR 214-b). There, as here, defendants challenged the law on the ground that it permitted commencement of actions already time barred under the New York Statute of Limitations otherwise applicable for injuries caused by toxic chemicals. In approving the proposed settlement of the Agent Orange litigation, the court (Weinstein, J.), rejected defendants’ Federal and State constitutional challenges to revival of otherwise time-barred claims by the New York Legislature (In Re "Agent Orange" Prod. Liab. Litig., 597 F Supp 740 [ED NY 1984]).
Here, as in Gallewski (supra), McCann (supra) and the "Agent Orange" (supra) case, the Legislature, in reviving time-barred causes of action, expressed the public policy of giving preference to plaintiffs privilege to litigate over defendants’ protection from stale or time-barred claims. The issue raised is whether there is a reasonable connection between the revival statute and the promotion of a legitimate State interest; here, health, safety and welfare (Nettleton Co. v Diamond, 27 NY2d 182, 193). In examining the constitutionality of statutes generally, the court must bear in mind the strong presumption that the Legislature investigated the problem it addressed and discovered the need for the legislation passed (Matter of Taylor v Sise, 33 NY2d 357). The court must determine: (1) whether the Legislature was acting in pursuit of permissible State objectives and, if so, (2) were the means adopted reasonably related to the accomplishment of those objectives (Montgomery v Daniels, 38 NY2d 41, 54).
Here, the Legislature acted within permissible objectives relating to health, safety and welfare by reviving causes of action based upon latent effects of exposure to toxic substances.
Where a question of what the facts establish is raised, the court should accept the opinion of the Legislature (Lincoln Bldg. Assocs. v Barr, 1 NY2d 413, 415, appeal dismissed 355 US 12, citing Old Dearborne Co. v Seagram Corp., 299 US 183, 196). In enacting the challenged statute, the Legislature expressed the view that victims of the latent effects of certain toxic substances were being denied legal recourse by the automatic application of the exposure-based Statute of Limitations often enough to justify an exception to its general application. A reasonable relationship exists between the reform and the objective of remedying the defects or inequities under the prior Statute of Limitations. There is considerable support for the position upon which the Legislature acted: the need to provide a forum for innocent victims who might *487 otherwise be time barred before becoming aware of their injuries. Indeed, this case is illustrative of that need. That studies or data may refute the legislative conclusions is not dispositive. As the Court of Appeals stated: "[t]he judiciary, however is not called on to weigh the relative worth of data or arguments which may be marshaled on either side as to the wisdom of determinations made by the Legislature in the realm of policy. 'Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance.’ ” (Montgomery v Daniels, 38 NY2d 41, 53, quoting Chicago, Burlington & Quincy R. R. Co. v McGuire, 219 US 549, 569.)
Given the substantial degree of legislative consideration to the need for the challenged tort reform, it would be inappropriate to express an opinion regarding the factual predicate for the statute, its philosophical justification or the wisdom of its enactment (see, Montgomery v Daniels, supra, at 53). In addition, staleness of claims based on the loss of evidence over time is not of significance. Defendants have been litigating similar non-time-barred DES cases for years.
Many of the same concepts relevant to the due process analysis are applicable to defendants’ equal protection challenge. Defendants argue that the revival statute is underinclusive; it arbitrarily, without scientific basis, singles out five substances for the additional burden of revival while excluding other toxic chemicals which cause latent injuries; it discriminates against out-of-State manufacturers; and it denies to defendant the protection of new CPLR article 16 and the section 2 (L 1986, ch 682) discovery-based Statute of Limitations.
Equal protection essentially requires that all persons similarly situated should be treated alike (Plyler v Doe, 457 US 202). As with the due process argument, the court must determine the appropriate standard of review. When social legislation relating to the public health is challenged, as here, the standard of review is rather narrow. The revival statute, contrary to defendants’ contentions, does not classify on the basis of a suspect (or quasi-suspect) class or impair a fundamental right and, therefore, a strict scrutiny standard is not applicable. The legislation must be upheld if the challenged *488 classification (targeting the five substances to the exclusion of other toxic chemicals causing latent injuries) is rationally related to a legitimate State purpose (Western & S. Life Ins. Co. v State Bd. of Equalization, 451 US 648, 657; Trump v Chu, 65 NY2d 20, 25).
Under the rational basis analysis, if any conceivable facts support the classification, there is no violation of the Equal Protection Clause. A law may not be arbitrary or irrational and must be reasonably related to some " 'manifest evil’ ” which need only be " 'reasonably apprehended’ ”. (Maresca v Cuomo, 64 NY2d 242, 250.) It is only as a last resort that courts will invalidate legislation as unconstitutional (Maresca v Cuomo, supra, at 250). Further, the stated purpose justifying the statute need not be its primary purpose (McGinnis v Royster, 410 US 263, 276) and the court may even hypothesize the motives of the Legislature to discern any conceivable legitimate goal furthered by the provision being attacked (Maresca v Cuomo, supra, at 251, quoting Weinberger v Salfi, 422 US 749, 780).
Defendants’ objection to the distinctions drawn by the Legislature between the five materials and other toxic substances is based partly upon the different treatment accorded the two groups under the 1986 tort reform bill. Defendants point to the additional burden of revival and the apparent inapplicability of CPLR article 16 to the revival section. Examination of the provision (as it relates to DES cases) and the legislative history reveals significant reasons to justify those distinctions, based upon the perceived realities of the latent effects of exposure to the five substances, the ability to ascertain a finite group of potential claimants and consequently to predict with some accuracy the economic costs of revival. Given the reasonable basis for the distinctions drawn by the Legislature, the alleged lack of scientific precision involved in drawing the line for revival may be disregarded. Here, the statutory classification does not result in such disparate treatment as to be arbitrary, irrational or invidiously discriminatory (see, Dandridge v Williams, 397 US 471; see also, Parker 86th Assocs. v City of New York, 93 AD2d 388, 394, affd 59 NY2d 986).
The legislation and the challenged classification passes constitutional muster under a rational basis test or even under the more demanding intermediate standard ("somewhere along the sliding scale between strict scrutiny * * * and rational basis” — Montgomery v Daniels, 38 NY2d 41, 61, supra). It cannot be said that the Legislature acted unreasonably in selecting the five substances for special treatment. The *489 Constitution is not offended merely because the classification is not made with mathematical or scientific exactitude or because in practice it results in some inequity (Dandridge v Williams, supra, at 485; Montgomery v Daniels, supra, at 63). In enacting reform legislation, the Legislature is permitted to proceed one step at a time and to address the part of the problem that appears most serious (Williamson v Lee Opt. Co., 348 US 483, 489; Montgomery v Daniels, supra, at 62).
Seen in its most fundamental light, defendants object to the fact that the line drawn by the Legislature in enacting tort reform includes them. Whenever the Legislature draws such a line some must be included, some excluded. As long as the line drawn is reasonable, the decision as to where to draw it is left to the Legislature and not the judiciary (Village of Belle Terre v Boraas, 416 US 1, 8; Montgomery v Daniels, 38 NY2d 41, supra).
Squibb maintains that a theory of liability under which a claimant may maintain an action without identifying the particular manufacturer of the DES taken by her mother is unconstitutional. Squibb contends that under the separation of powers doctrine such a radical restructuring of traditional tort law must be left to the Legislature. Based upon a mistaken belief that causation need not be shown under the challenged theories, it argues that absent causation plaintiff lacks standing and this court is powerless to provide a remedy.
Defendant’s contentions lack merit and wholly fail to meet the stringent burden to establish unconstitutionality.
Accordingly, plaintiff’s motion to strike the affirmative defenses challenging the revival statute as unconstitutional and alleging that this action is time barred is granted.
Defendants’ cross motions for summary judgment dismissing the complaint as barred by the Statute of Limitations are denied.