OPINION OF THE COURT
Robert G. Hurlbutt, J.
Plaintiffs commenced the first-captioned action in September 1986, and the second-captioned action in September 1987, by service of summonses and complaints asserting causes of action including negligence, strict liability, implied warranty and loss of consortium. Plaintiff Donald Burdick alleges that while he was employed by the Valeron Corporation at the Valenite Metals Division in Dewitt, New York, from 1966 to 1969, he was exposed to "cobalt, cobalt dust, and fumes containing cobalt” which caused him to develop cobalt-related lung disease (otherwise known as hard metals disease) and that defendants were manufacturers and suppliers of the cobalt and cobalt-containing materials which caused his injury. The summary judgment motions brought by defendant Afrimet-Indussa Inc., in the first-captioned action, and defendant Kennametal, Inc., in the second-captioned action are identical in fact and theory and, thus, the determination made herein shall apply to both captioned actions.
A similar action commenced by Donald Burdick in 1984, in which Afrimet-Indussa Inc., and Kennametal, Inc., were named as defendants, was dismissed in April 1985 as a result of the application to plaintiff’s claim of the then existing three-year exposure-based Statute of Limitations. The present actions were commenced under the revival of actions provision of the 1986 toxic torts legislation, which states as follows: "Notwithstanding any other provision of law * * * every action for personal injury, injury to property or death caused by the latent effects of exposure to diethylstilbestrol, tungsten-carbide, asbestos, chlordane or polyvinylchloride upon or within the body or upon or within property which is barred as of the effective date of this act or which was dismissed prior to the effective date of this act solely because the applicable period of limitations has or had expired is hereby revived and an action thereon may be commenced provided such action is commenced within one year from the effective date [July 30, 1986] of this act [L 1986, ch 682]”. (L 1986, ch 682, § 4 [eff July 30, 1986].)
Defendants Afrimet-Indussa Inc. and Kennametal, Inc. *600 (hereafter defendants) move for summary judgment on the grounds that the dismissal of the 1984 action bars the maintenance of the instant actions under the doctrine of res judicata, in that the revival statute does not revive plaintiffs’ claims against these defendants. They also assert that the revival statute is unconstitutional.
Initially, it must be determined whether the revival of actions provision of the toxic tort legislation (L 1986, ch 682) revives plaintiffs’ action against these defendants for injury caused by plaintiff’s exposure to cobalt while employed in the tungsten-carbide industry. Defendants maintain that the statute revives actions for injuries caused by the latent effects of exposure to tungsten-carbide, which in a strict literal sense is a compound of the elements tungsten and carbon, and which contains no cobalt. Defendants aver that they have never supplied or manufactured tungsten-carbide or any of the other substances mentioned in the statute, and they conclude that the statute does not revive claims for injuries caused by exposure to cobalt.
Defendants provide powdered cobalt to manufacturers of cemented tungsten-carbide products, which are extremely hard metals often used in cutting tools. Cemented tungsten-carbides, produced by the Valeron Corp. at the plant where plaintiff was employed, are created by the process of cementing tungsten-carbide molecules together with a binding agent, usually cobalt. Defendants do not controvert that cobalt was the only binding agent used at the Valenite Metals plant, nor that they supplied cobalt to the Valeron Corp. for use at the plant where plaintiff was employed. They simply contend that "tungsten-carbide” is a compound entirely separate and distinct from those substances mixed with it to form cemented tungsten-carbides, including cobalt, and that any statute purporting to revive claims for injuries caused by the effects of exposure to tungsten-carbide does not revive claims for injuries caused by the effects of exposure to cobalt.
Plaintiffs reply that the reference to tungsten-carbide in the revival statute was intended by the Legislature to speak directly to the hard metals disease claims of plaintiffs and other Valeron employees, and that the words "tungsten-carbide” were used in the statute as a synonym for the cemented tungsten-carbide industry which utilizes the harmful substance cobalt. Plaintiffs submit a number of scholarly articles published in trade and medical journals in support of their contention that cobalt is recognized as the single most likely *601 cause of respiratory disease in tungsten-carbide workers. The affidavit of a former manager of the Valeron facility in Dewitt, New York, avers that such plant was the only cemented tungsten-carbide manufacturing plant in New York State prior to its closure in 1982, a fact which is not controverted by defendants. Plaintiffs conclude that to omit the cobalt suppliers from the revival statute would frustrate the legislative intent and purpose and render the statute a practical nullity with regard to the inclusion of "tungsten-carbide” therein.
The issue thus presented to the court is whether plaintiff’s claim for compensation for injury resulting from his exposure to cobalt and cobalt dust during his employment at the Valeron tungsten-carbide manufacturing plant near Syracuse, New York, from 1966 through 1969, is revived by Laws of 1986 (ch 682, § 4), which revives claims for the latent effects of exposure to "tungsten-carbide”. It should be noted that this determination will have consequences beyond the captioned cases, as there are a number of separate actions commenced by former Valeron employees against cobalt suppliers pursuant to the revival statute.
" 'The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function.’ ” (New York State Bankers Assn. v Albright, 38 NY2d 430, 437.) Generally, the plain meaning of the words of a statute must be given literal effect, if they are unambiguous. "Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76.) "Rules of construction are invoked only when the language used in a statute leaves its purpose and intent uncertain and questionable”. (56 NY Jur, Statutes, § 107.) Defendants urge that "tungsten-carbide” as used in the revival statute clearly expresses legislative intent to limit revival to actions based upon exposure to the pure compound of tungsten and carbon alone, and that the words of the statute have a plain, precise and unambiguous meaning precluding application of the rules of statutory construction and resort to extrinsic matter.
Defendants’ position, however, ignores the overriding rule that the court must effectuate the purpose and intent of the Legislature even if, to do so, the court must go beyond the literal meaning of the words. (Williams v Williams, 23 NY2d 592; Allstate Ins. Co. v Libow, 106 AD2d 110, 114; Matter of *602 Harris, 98 Misc 2d 766; 56 NY Jur, Statutes, § 123.) "Absence of facial ambiguity is * * * rarely, if ever, conclusive.” (New York State Bankers Assn. v Albright, 38 NY2d 430, 436, supra.)
"[T]he fact that the words used are not ambiguous does not in all cases prohibit the courts from considering the surrounding circumstances, the canons of construction * * * and other considerations indicating the legislative intent, since it is clear intent, not clear language, which precludes further investigation as to the interpretation of a statute * * * The uncertainty of sense in a statute, which warrants the application to it of the principles of construction does not originate in uncertainty of expression alone, but may proceed also from the uncertainty caused by an unjust or unreasonable application; and, if a statute viewed from the standpoint of the literal sense of the language, works an unjust or unreasonable result, an obscurity of meaning exists which calls for judicial construction.” (McKinney’s Cons Laws of NY, Book 1, Statutes §76.)
The obvious practical result of defendants’ stance on the interpretation of "tungsten-carbide” as used in the revival statute is that the statute gives no remedy to anyone. The only tungsten-carbide workers known to have toxic tort claims in New York are those who were employed at the Valeron plant in Dewitt, and their injuries are alleged to result from their exposure to cobalt during the cemented tungsten-carbide manufacturing process. To accept defendants’ interpretation of the revival statute as it applies to plaintiffs’ claims would be to promote blind adherence to the letter of the law regardless of the absurdity of the result. (See, Williams v Williams, 23 NY2d 592, supra; Surace v Banna, 248 NY 18; Allstate Ins. Co. v Libow, 106 AD2d 110, supra.) These circumstances prompt the court to look beyond the literal meaning of the words for " 'the general purpose and manifest policy intended to be promoted.’ ” (Surace v Banna, supra, at 21; Matter of Carr v New York State Bd. of Elections, 40 NY2d 556.) The court must discern the purpose and policy underlying the statute and give "the words a meaning which serves, rather than defeats, the ends intended by the Legislature.” (MVAIC v Eisenberg, 18 NY2d 1, 3.)
The intention of the Legislature must be ascertained from the purpose underlying the enactment and from the legislative history of the act. (New York State Bankers Assn. v Albright, 38 NY2d 430, supra; McKinney’s Cons Laws of NY, *603 Book 1, Statutes §§ 94, 124.) The purpose of the revival statute (L 1986, ch 682, § 4) is made clear in the Governor’s memorandum on approval, which states as follows:
"This measure * * * remedies a fundamental injustice in the laws of our State which has deprived persons suffering from exposure to toxic or harmful substances from having an opportunity to present their case in court * * *
"Most importantly, this measure remedies the injustices suffered by all of the currently known categories of victims of exposure to toxic or harmful substances. These include persons who have suffered serious injuries as a result of exposure to * * * tungsten-carbide * * * and have been deprived of access to the courts because their claims were time barred. This bill revives their claims for a one year period and enables them to have their day in court.
"Approval of this legislation culminates a multi-year effort by these victims to achieve this long overdue reform in our law.” (1986 McKinney’s Session Laws of NY, at 3182-3183.)
It is clear from the Governor’s memorandum, and from other materials contained in the bill jacket to the statute, that "tungsten-carbide” was intended to identify 1 of the 5 then known categories of victims of exposure to toxic substances whose claims were time barred. The cobalt-related claims of the Valeron employees, adjudicated to be time barred in 1984, were known to the Legislature when the revival statute was enacted in 1986. The floor debate transcripts, appended by plaintiffs to their papers on this motion, reflect debate had on predecessor toxic tort bills introduced in 1985 (S 1414-A, S 3624-A). The floor debate transcripts reflect discussion of "a limited number of people who worked with tungsten-carbide in a particular plant near Syracuse.” Senator Lombardi, a sponsor of predecessor bills, stated "we want to take care of the Valenite workers * * * and * * * we want to help those people.” Further, regarding S 3624-A, "the bill itself would say that the Valenite workers who are identified, and theres [sic] about 60 of them in the State, would be able to bring their action”. Throughout the debate transcripts, the victims are referred to as "the Valenite workers”, "the tungsten-carbide workers” and the "victims of tungsten-carbide” interchangeably.
That the Valenite employees and their cobalt-related claims were contemplated by the Legislature in the enactment of Laws of 1986 (ch 682, § 4) is further indicated by the fact that *604 the same floor debates include discussion of 3 of the 4 other substances contained in the revival statute, DES, asbestos and chlordane, in the same context as the discussion of tungsten-carbide and the Valenite employees. Clearly, the known category of tungsten-carbide victims intended to benefit by the revival statute was the group comprised of former Valeron employees suffering from hard metals disease, of which plaintiff was one.
Moreover, it is clear that the Legislature was aware of the prominent role allegedly played by cobalt in the development of hard metals disease. Predecessor bills (S 1414-A [1985]; S 3624-A. [1985]; S 10051 [1984]) spoke of "reviving or extending certain causes of action for personal injury or death caused by the latent effects of exposure to tungsten or cobalt”. Defendants argue that the exclusion of the word "cobalt” from the revival statute ultimately passed indicates legislative intent to exclude actions based on exposure to cobalt. Although the maxim that the failure of the Legislature to specifically include a thing establishes intent to exclude it is a useful tool of statutory construction, it must not be utilized to defeat the purpose of the enactment. (Erie County v Whalen, 57 AD2d 281, affd 44 NY2d 817; Goldstein v City of Long Beach, 28 AD2d 558.)
Plaintiffs maintain that the Legislature used "tungsten-carbide” in the statute as a broad, all-inclusive synonym for the hard metals manufacturing process to avoid unintentionally omitting any injury-causing element by virtue of having specified certain elements. The letters from individual legislators submitted in support of this contention must be disregarded both because they are unsworn, and because they are dated well after the enactment of the revival statute. Although preenactment statements of legislators are properly considered part of the legislative history, postenactment statements are irrelevant to the legislative intent. (Civil Serv. Employees Assn. v County of Oneida, 78 AD2d 1004.)
It appears, however, from other legislative materials and the affidavit of plaintiffs’ expert that "tungsten-carbide” is commonly used in the industry to refer to the finished hard metal product manufactured at the Valenite Metals plant where plaintiff was employed. As stated above, the transcripts of floor debates to the predecessor statutes reveal that the Valeron employees were known to members of the Legislature as "the tungsten-carbide workers” and the "victims of tungsten-carbide”. Additionally, the bill jacket to the 1986 statute *605 contains memoranda in which "hard metals” is used as a synonym for "tungsten-carbide”. Even more revealing are the material safety data sheets published by defendant Kennametal, Inc., and other cobalt suppliers, wherein both "tungsten-carbide” and "hard metals” are specifically identified as synonyms for "tungsten-carbide product with cobalt binder”. Accordingly, this court is satisfied that the finished hard metal product manufactured at the Valenite Metals Division plant in Dewitt, New York, is commonly referred to as "tungsten-carbide”, that the manufacturing process is commonly known as the tungsten-carbide manufacturing process, and that the Legislature was aware of the common usage when the revival statute was enacted.
The clear purpose of the revival statute vis-á-vis the tungsten-carbide workers was to revive their claims, and the statute must be read to advance the remedy sought to be provided. The Legislature intended to revive the claims of the former Valer on employees who worked at the Valenite Metals plant in Dewitt, New York, and who were exposed to toxic or harmful substances in the course of the manufacture of hard metals or "tungsten-carbide”. "Tungsten-carbide”, as used in the revival statute, must be construed to be inclusive of all harmful and toxic substances encountered in the hard metals manufacturing process. Any contrary interpretation would constitute blind adherence to the strict letter to the detriment of "the general purpose and manifest policy intended to be promoted”. (Surace v Danna, 248 NY 18, 21, supra.) Thus, plaintiffs’ actions against these defendants for injury caused by plaintiffs’ exposure to cobalt during the tungsten-carbide manufacturing process are revived by Laws of 1986 (ch 682), such revival being consistent with the legislative intent.
Defendants further argue that the dismissal of the plaintiffs’ 1984 actions on Statute of Limitations grounds constitutes final judgment on the merits, that the instant action cannot be maintained under the doctrine of res judicata, and that any statute purporting to deprive defendants of a final judgment in which they have a property interest is an unconstitutional deprivation of property without due process of law. In Matter of Meegan S. v Donald T. (64 NY2d 751), where petitioner’s paternity suit was dismissed as untimely in 1983 under the Statute of Limitations then in effect, and where the Legislature subsequently enlarged the Statute of Limitations, the Court of Appeals held that a second petition brought on the same grounds under the newly expanded Statute of Limita *606 tions was not subject to dismissal on grounds of res judicata. In so holding, the court said that "[t]he issue disposed of by the order of dismissal in the first proceeding * * * was only that petitioner’s claim was untimely under the Statute of Limitations then applicable * * * and it did not reach the issue of timeliness under the amended law, which would permit petitioner’s claim.” (Matter of Meegan S. v Donald T., 64 NY2d 751, 752, supra.) Here, as in Matter of Meegan S., the 1984 dismissal, based solely on the Statute of Limitations then applicable to plaintiffs’ claims, does not bar petitioner from "prosecuting this proceeding pursuant to a right newly conferred * * * by statute.” (Supra, at 752.) The 1984 dismissal, even though final and on the merits, cannot be an adjudication of rights thereafter conferred by law. Consequently, under the holding of the Court of Appeals in Matter of Meegan S., defendants’ motions to dismiss these actions on the basis that they are barred by the dismissal of the 1984 action are denied.
The constitutional due process issues raised by defendants on these motions are quite aptly addressed by the Supreme Court, New York County, in Hymowitz v Lilly & Co. (136 Misc 2d 482). In Hymowitz, plaintiff was a DES victim who brought her action for the first time under the revival provisions of Laws of 1986 (ch 682, §4). The defendants challenged the revival statute on equal protection and due process grounds, arguing on the due process issue that "dismissal (or the passage of the applicable time bar) gives rise to substantive property rights which * * * may not be abrogated”. (Supra, at 485.) The Hymowitz court found that, as a general rule, Statutes of Limitation reviving time-barred actions are not violative of due process, and that "Statutes of Limitation relate to the availability of a remedy and not to the destruction of any fundamental right”. (Supra, at 485.) Consequently, the revival of actions statute was reviewed under a rational basis standard, rather than the strict scrutiny or some intermediate standard urged by defendants.
Citing other cases in which the courts upheld the revival of time-barred causes of action (Gallewski v Hentz & Co., 301 NY 164; Matter of McCann v Walsh Constr. Co., 282 App Div 444, affd 306 NY 904; In re "Agent Orange” Prod. Liab. Litig., 597 F Supp 740 [ED NY 1984]), the court in Hymowitz (supra) described the policy underlying revival statutes as an expression of preference for plaintiff’s privilege to litigate over defendant’s protection from stale claims. (Supra, at 486.) *607 Identifying the legitimate State interest as that of the promotion of the health, safety and welfare of society and applying the standard which requires a reasonable connection between the revival statute and a legitimate State interest, the Hymowitz court held that "[a] reasonable relationship exists between the reform and the objective of remedying the defects or inequities under the prior Statute of Limitations.” (Supra, at 486.) This court perceives no distinction between plaintiff’s position in Hymowitz and the position of plaintiffs in the instant actions. Accordingly, this court adopts the holding of the court in Hymowitz insofar as it provides that the revival statute does not violate the dictates of the Due Process Clauses of the State and Federal Constitutions.
Defendants’ motions for summary judgment dismissing the complaints in their respective actions are denied.