**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**No. 1622, Docket 93–6028.**

United States Court of Appeals, Second Circuit.

Argued June 4, 1993.

Decided Nov. 23, 1993.

Bernard W. Bell, Asst. U.S. Atty., New York City (Roger S. Hayes, Acting U.S. Atty., S.D.N.Y., Richard W. Mark, Asst. U.S. Atty., of counsel), for defendant-appellant.

David M. Wise, New York City, for plaintiff-appellee.

Before: PIERCE, WALKER, and JACOBS, Circuit Judges.

WALKER, Circuit Judge:

The United States appeals from a judgment entered in the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*), granting summary judgment to Consolidated Edison Company of New York, Inc. ("Con Edison") on its $1,207,087 tax refund claim. This appeal considers the proper treatment under the Internal Revenue Code of discounts Con Edison received from New York City (the "City") in exchange for prepayment of its real property taxes in 1975 and 1978. The district court ruled that the discounts were exempt from taxation as interest on municipal obligations and could be deducted from Con Edison's gross income as real property taxes paid or accrued during the tax years in question. We reverse in part and affirm in part the judgment of the district court.

## BACKGROUND

From 1975 through 1979, the City experienced a severe fiscal crisis. In May of 1975, with the public credit market closed to it, it appeared that the City would be unable to meet its payroll obligations. The Association for a Better New York ("ABNY"), an association of New York-based companies including Con Edison, offered to help the City acquire the needed funds. The Chairman of ABNY suggested that major property taxpayers purchase City-issued certificates of deposit that could be turned in as payment of real estate taxes when tax obligations became due. Several major property owners, including Con Edison, declined to purchase the certificates for fear that if the City declared bankruptcy, they would not be able to use the certificates to extinguish their tax liabilities.

The Chairman of ABNY then proposed that, instead of purchasing the certificates, the property owners directly prepay their taxes. During the relevant period, City real estate taxes became due and payable in four installments throughout the City's fiscal year: on August 1, October 1, January 1, and April 1. On each due date, a tax lien in favor

of the City automatically arose on the taxed property and remained in place until the taxes were paid. However, the City provided a thirty day "grace period" after each due date during which taxpayers could satisfy their tax liability without incurring interest charges and penalties. Consequently, many taxpayers with large obligations waited until the end of the grace period to make payments.

As a condition to participating in the prepayment plan, Con Edison required that its taxes be discounted in an amount approximating the prime interest rate in order to make the company whole for its costs of borrowing the funds needed to make the prepayment. The City Council thus amended the relevant City Charter provision to allow property owners to prepay the first installment of property taxes before July 1, 1975, the start of the fiscal year, and to provide an 8% per annum discount rate from the date of payment until August 29, 1975, the end of the grace period following the installment due date. 1 N.Y.City Charter & Admin.Code Ann. § 1518(5) (Williams Press 1976).

As another prerequisite to prepayment, Con Edison secured a legal opinion from the City's Corporation Counsel stating that "the prepayment of first quarter 1975/1976 real estate taxes . . . will constitute fully enforceable and valid payments of such taxes and will extinguish and satisfy such taxes to the extent of the amount of such prepayments plus the 8% per annum discount based thereon and cannot be set aside or modified by any litigation . . . or by a proceeding under Chapter IX of the Bankruptcy Law."

On June 6, 1975, Con Edison prepaid a portion of its real property taxes in the amount of $50,000,000, and the City provided Con Edison with a receipt for payment of $50,937,814, which accounted for the 8% discount. The receipt provided that the prepayment "constitutes a fully enforceable and valid payment of such taxes . . . and . . . completely extinguishes Con Edison's liability for real estate taxes which would otherwise become payable on August 1, 1975." To bolster its position at the time that the transaction was not a loan to the City, Con Edison

treated the amount of the discount as income in its books of account, placing it under an account headed "miscellaneous non-operating income," rather than "interest income."

Con Edison made five subsequent prepayments under terms similar to the June 1975 prepayment, but under different City Charter provisions. 1 N.Y.City Charter & Admin.Code Ann. § 1518(6) (Williams Press 1976); 1 N.Y.City Charter & Admin.Code § 1519(3) (1985–86 Cum.Supp.Ann.). These later provisions stated that upon prepayment, the taxpayer's real estate taxes were satisfied and extinguished to the extent of the amount prepaid plus the discount provided for therein. In its books of account, Con Edison again treated the amount of the discounts as income.

On its federal income tax returns, Con Edison excluded the prepayment discounts from calculation of its gross income under 26 U.S.C. § 103(a), which provides, with exceptions not relevant here, that "gross income does not include interest on any State or local bond." In addition, Con Edison deducted the undiscounted amount of its real estate taxes (the amount it prepaid plus the discounts) from its gross income under 26 U.S.C. § 164(a)(1), which permits taxpayers to treat as a deduction real property taxes "paid or accrued" during the tax year.

The Internal Revenue Service ("IRS") audited Con Edison's 1975 and 1978 tax returns and concluded that the company had erroneously characterized the discounts as interest on a municipal obligation. The IRS did not challenge Con Edison's treatment of the discounts as property taxes. The IRS assessed a deficiency against the company, which Con Edison subsequently paid. Con Edison then filed refund claims, which the IRS denied.

On August 29, 1988, Con Edison filed its complaint in the United States District Court for the Southern District of New York, asserting that the discounts were tax exempt interest on municipal obligations under § 103(a). The United States interposed an affirmative defense that Con Edison was not entitled to a refund because it improperly deducted the discounted amounts as real property taxes "paid or accrued" under

§ 164(a)(1). Both sides moved for summary judgment.

On November 20, 1991, the district court issued an opinion ruling that Con Edison properly excluded the discounts from its gross income as tax exempt interest on municipal obligations, but improperly deducted the discounts as real property taxes paid or accrued during the tax year. On November 19, 1992, the district court issued a second opinion reversing its conclusion on the second issue. The court determined that Con Edison could deduct the discounts as property taxes because they constituted part of Con Edison's tax obligations, which had fully "accrued" by the end of the relevant tax years. On December 9, 1992, the district court entered judgment in favor of Con Edison in the amount of $1,207,087.

This appeal followed.

### DISCUSSION

■ We review the district court's grant of summary judgment *de novo* "to determine whether a genuine issue of material fact exists and whether the law was applied correctly below." *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). The Supreme Court has stated that "[t]he general characterization of a transaction for tax purposes is a question of law subject to review." *Frank Lyon Co. v. United States*, 435 U.S. 561, 581 n. 16, 98 S.Ct. 1291, 1302 n. 16, 55 L.Ed.2d 550 (1978). In this case, the facts are undisputed; the parties disagree only about their legal significance.

### I. *26 U.S.C. § 103(a)*

■ The parties do not seriously dispute that the prepayment discounts constituted gross income to Con Edison within the meaning of 26 U.S.C. § 61. Section 61 provides that gross income includes "all income from whatever source derived." 26 U.S.C. § 61. That section lists various examples of gross income, including interest income. Con Edison contends that the prepayment discounts were interest income, although exempt from taxation under 26 U.S.C. § 103(a) as interest on a municipal obligation. As a threshold matter, we believe that the discounts fall

within the definition of gross income under § 61 since, as discussed further, *infra,* Con Edison derived a "readily realizable" economic benefit upon prepayment of its real estate taxes. *See Rutkin v. United States,* 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833 (1952).

■ We next address whether the income was tax exempt under § 103(a) as interest on a municipal obligation. Section 103(a) provides a tax exemption only for interest paid by a state, territory, or possession of the United States, or a political subdivision thereof, on an obligation incurred under the political unit's borrowing power. *See Commissioner v. Meyer,* 104 F.2d 155, 156 (2d Cir.1939). The IRS contends that the City did not exercise its borrowing power in the course of the prepayment plan and that the discounts were simply compensation for the early payment of taxes.

The district court rejected this view as "unduly formalistic," ruling that if one looks at the substance of the transactions, the prepayments were essentially loans to help provide the City with capital that it could not obtain elsewhere. The court thus viewed the transactions as the equivalent of a three-step process in which the City borrowed money from Con Edison; the City repaid the sum with interest; and Con Edison returned the repayment to the City to satisfy its tax liabilities. Under this view, the discounts constituted interest on municipal obligations.

We acknowledge the appeal of this approach to a conceptually difficult problem and agree with the very able district judge that cases should not be governed by "formalistic" principles. However, in this particular matter, we attach significant, and indeed controlling, weight to Con Edison's decision at the time of the transactions to avoid being a creditor. We thus disagree with the district court's opinion because it allows Con Edison to disregard the transactional form that it adopted at the time of the prepayments. Con Edison was loathe to enter into a debt transaction with the City, as evidenced by its refusal to purchase City-issued certificates of deposit. Con Edison agreed to participate in the prepayment plan because it could structure its disbursements as pay-

ments of its tax obligations and thereby avoid the risks associated with an extension of credit. Con Edison's current argument thus contravenes its position at the time of the transactions. For example, an internal Con Edison memorandum dated December 2, 1975 justified the January 1976 prepayment by pointing to the Corporation Counsel's opinion "that the prepayment constitute[d] a fully enforceable and valid payment of tax and not a loan. . . ."

We have previously held that when "knowledgeable parties cast their transaction voluntarily into a certain formal structure, ` . . . they should be and are, bound by the tax consequences of the particular type of transaction which they created." *Federal Bulk Carriers, Inc. v. Commissioner,* 558 F.2d 128, 130 (2d Cir.1977). The Supreme Court endorsed this approach in *Don E. Williams Co. v. Commissioner,* 429 U.S. 569, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977), stating that, " 'while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not.' " 429 U.S. at 579–80, 97 S.Ct. at 857 (quoting *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974)). Based on this precedent, we reject Con Edison's attempt to recast its payments as *de facto* loans, and the discounts it received as *de facto* interest. While there is no question that Con Edison greatly aided the City by helping it acquire much-needed funds, Con Edison carefully structured the transaction by which it performed this act of public service. As in *Williams,* "[w]e do not indulge in speculating how the transaction might have been recast with a different tax result." 429 U.S. at 580, 97 S.Ct. at 857.

■ Examining the form of the transactions adopted by the parties, we think it clear that the City was not exercising its borrowing power in accepting Con Edison's tax prepayments, but instead was exercising its power to tax. The State of New York has delegated to municipalities the authority to collect and assess taxes. N.Y. Const. art. IX, § 2(c)(8). Municipalities also have the power to change the due dates of installments of property taxes in order to accelerate the municipalities' cash flow. *See Parker 86th Assocs. v. City of New York,* 93 A.D.2d 388, 393, 461 N.Y.S.2d 794, 798 (1st Dep't), *aff'd,* 59 N.Y.2d 986, 466 N.Y.S.2d 682, 453 N.E.2d 1099 (1983) (upholding under Article IX, § 2(c)(8) city law requiring taxpayers with sizeable property holdings to pay property taxes semiannually while allowing others to pay in quarterly installments). Thus, when the City offered a prepayment discount in order to create an incentive for taxpayers to prepay property taxes, its actions were authorized under its taxing power, not its borrowing power.

Con Edison contends that, because the prepayment discounts were motivated by the City's fiscal crisis and because the transactions giving rise to the discounts were voluntary rather than coerced, the City effectively sought loans of last resort, and thus, the offer of prepayment discounts was an exercise of the City's borrowing power. However, the motivation for the City's decision to offer incentives to taxpayers for tax prepayments does not transform an exercise of the taxing power into an exercise of the borrowing power. *See, e.g., M.C. Parrish & Co. v. Commissioner,* 147 F.2d 284, 285 (5th Cir. 1945) (ruling that warrants payable on demand were issued under state's purchasing power, not its borrowing power, even though issued because state had limited cash resources); *Holley v. United States,* 124 F.2d 909, 910–11 (6th Cir.), *cert. denied,* 316 U.S. 685, 62 S.Ct. 1276, 86 L.Ed. 1757 (1942) (city's financial difficulties did not alter court's view that interest payments on condemnation award were made pursuant to city's power of eminent domain, not its power to borrow).

■ Con Edison also argues that the prepayments were not authorized under Article IX, § 2(c)(8) of the New York Constitution, and New York Municipal Home Rule Law § 10(1)(ii)(a)(8), but instead were authorized under § 20.00(b) of the Local Finance Law. N.Y.Local Fin.Law § 20.00(b) (Consol.1989). Section 20.00(b), however, provides only that

"nothing contained in this section shall be construed to *prevent* the prepayment of taxes to a municipality," *id.* (emphasis added), and thus it cannot be construed to empower municipalities to offer discounts for prepayments.

■ Because the City did not "borrow" the prepayments from Con Edison, the discounts it gave do not constitute tax exempt interest under § 103(a). As the district court correctly noted, the term "interest," when used in the Internal Revenue Code, does not refer "to 'some esoteric concept derived from subtle and theoretic analysis,'" but rather to the term's "'usual, ordinary and everyday meaning.'" *Deputy v. Du Pont*, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940) (quoting *Old Colony R.R. v. Commissioner*, 284 U.S. 552, 561, 52 S.Ct. 211, 214, 76 L.Ed. 484 (1932)). The usual definition of interest is "the amount which one has contracted to pay for the use of borrowed money." *Old Colony*, 284 U.S. at 560, 52 S.Ct. at 214. Since the prepayments constituted Con Edison's payment of its otherwise owed tax obligations, the discounts cannot accurately be characterized as "interest" paid for the use of borrowed monies. Rather, Con Edison paid the taxes it owed to the City early in exchange for the 8% discount. At the time of the prepayment, both sides received full consideration and owed no future obligation—Con Edison for its tax liability, and the City for Con Edison's early payment.

Con Edison argues that, in other contexts in the Code, prepayment discounts have been treated as interest. *See, e.g.,* 26 U.S.C. § 163(e) (original issue discount on a debt instrument allowed as interest deduction); Treas.Reg. § 1.61–7(c), 26 C.F.R. § 1.61–7(c) (original issue discount treated as interest income); Treas.Reg. § 1.471–3(b), 26 C.F.R. § 1.471–3(b) (purchasers of inventories may treat strictly cash discounts approximating a fair interest rate as interest).

However, provisions allowing cash discounts to be considered as interest income for purposes of inventory calculations are inapposite because they pertain to an unrelated area of the Tax Code and determine only whether such discounts are included within the definition of income. Provisions involving tax deductions for original issue discounts on debt instruments are also inapplicable. In those instances, the discount is given in exchange for an extension of credit and there is no difference between the debtor's paying interest separately on a debt instrument or paying interest by redeeming a discounted debt instrument at face value. *See United States v. Midland–Ross Corp.*, 381 U.S. 54, 58, 85 S.Ct. 1308, 1310, 14 L.Ed.2d 214 (1965) ("The $6 earned on a one-year note for $106 issued for $100 is precisely like the $6 earned on a one-year loan of $100 at 6% stated interest."). In contrast, the prepayment discounts issued by the City were not given in exchange for an extension of credit, but as consideration for Con Edison's agreement to prepay its tax liability.

The prepayment discount was characterized and understood by Con Edison and the City to be a partial satisfaction of Con Edison's unreduced tax liability; a pre-existing obligation was therefore paid in full rather than forgiven in part. Con Edison itself treated the amount of the discount as income on its books of account, and correspondingly deducted the full tax liability. Con Edison thus received an economic benefit from the discounts which it should have included in its gross income for the audited tax years. *See Rutkin*, 343 U.S. at 137, 72 S.Ct. at 575 (A gain "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it."). The economic value Con Edison realized from the discounts was the satisfaction of its tax liabilities in the amount of the discounts. Con Edison's error was in thinking that it could exclude this otherwise taxable income under § 103(a) as interest paid on municipal obligations.

## II. *26 U.S.C. § 164(a)(1)*

■ We now turn to the question whether Con Edison properly deducted as "taxes paid or accrued" the entire amount of taxes deemed satisfied when Con Edison prepaid its real property taxes in 1975 and 1978. Under 26 U.S.C. § 164(a)(1), taxpayers may deduct local real property taxes in the year that the taxes are "paid or accrued." Con

Edison deducted the prepayment discounts it received as well as the cash payments it made to the City in the years at issue. The government contends that the discounts cannot be deducted as a property tax "paid or accrued." The district court held that the discounts could be deducted under § 164(a)(1) because they could be considered part of the tax liabilities that Con Edison had accrued before the end of the relevant years. We agree with the district court.

■ As an accrual taxpayer, Con Edison is entitled to deduct real estate taxes that have accrued even if they have not been paid. A tax accrues when " 'all the events ... occur which fix the amount of the tax and determine the liability of the taxpayer to pay it.' " *United States v. Consolidated Edison Co.*, 366 U.S. 380, 385 n. 5, 81 S.Ct. 1326, 1330 n. 5, 6 L.Ed.2d 356 (1961) (quoting *United States v. Anderson*, 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347 (1926)). The IRS has previously determined that New York City real estate taxes accrue as of the dates on which, under the charter of New York City, they become due and payable and become liens, and that accrual method taxpayers may deduct their City property taxes as of these dates. Rev.Rul. 70–595, 1970–2 C.B. 41 (as codified at 26 C.F.R. § 1.164–1); *see also Commissioner v. Milner Hotels, Inc.*, 173 F.2d 566, 567 (6th Cir.1949); *Commissioner v. Le Roy*, 152 F.2d 936, 937 (2d Cir.1945). The 1975 amendment to § 1518 of the New York City Charter provides that real estate taxes are deemed to be due and payable in the amount of the actual payment plus any discount "upon such prepayment." 1 N.Y.City Charter & Admin.Code Ann. § 1518(6) (Williams Press 1976). Accordingly, Con Edison's total undiscounted tax liability accrued and became deductible under § 164(a)(1) upon prepayment.

The IRS argues that taxes never became "due" in the amount of the discounts because the City forgave these taxes in exchange for Con Edison's prepayment. However, it follows from our previous analysis that the City did not reduce Con Edison's underlying tax liability, but rather, offered the discounts as consideration for the prepayment. The discounts were then effectively utilized to dis-charge Con Edison's full tax liability, as evidenced by the amendment to the City Charter. We thus agree with the district court's statement that "the prepayments Con Edison made to the City were equal in *value* to the face amount of Con Edison's property tax liabilities, even though the cash amount of the prepayments was less;" this is because Con Edison's prepayments to the City included both its actual cash payment plus the use value of this cash during the period of prepayment. Con Edison is therefore entitled to take a tax deduction under § 164(a)(1) for the full amount shown on the prepayment receipts it received from the City. We note that this conclusion reinforces our prior holding that Con Edison must include the discounts in its gross income since they had the economic value of satisfying part of its tax liabilities.

## CONCLUSION

The discounts Con Edison received from the City did not constitute tax-exempt interest on a municipal obligation under § 103(a), but they were properly deducted as property taxes paid or accrued under § 164(a)(1). Therefore, Con Edison is not entitled to a refund, but does not owe the government for further taxes. The district court's decision is reversed in part, and affirmed in part.