MARILYN BIKOWICZ et al., Respondents, v NEDCO PHARMACY, INC., et al., Respondents, and STERLING DRUG, INC., et al., Appellants, et al., Defendants.

Third Department, July 16, 1987

APPEARANCES OF COUNSEL

*Hesson, Ford & Whalen (Donald P. Ford, Jr.,* and *Michael J. Hutter* of counsel), for appellants.

*Grogan, Steenburg & Pentkowski (David H. Pentkowski* of counsel), for Marilyn Bikowicz and another, respondents.

*Stephen R. Spring* for Nedco Pharmacy, Inc. and others, respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

In April 1968, plaintiff Marilyn Bikowicz (hereinafter plaintiff) went to Dr. Eleanor Hinse complaining of headaches. Hinse injected plaintiff intramuscularly with 30 milligrams of pentazocine together with 50 milligrams of Dramamine. Pentazocine is a prescription drug manufactured and distributed by defendant Sterling Drug, Inc. under the trade name Talwin through its subsidiary, defendant Winthrop Laboratories, Inc. Thereafter, whenever plaintiff suffered from a migraine headache, she would receive such injections either at Hinse's office or at a hospital emergency room. When plaintiff was planning a trip to Florida in February 1973, Hinse issued her a prescription for four ampules each of 50 milligrams of Dramamine and four ampules each of 30 milligrams of Talwin, together with a prescription for disposable syringes. Although

Hinse claimed that the prescription was not to be refilled, plaintiff, from 1973 through 1981, obtained many refills of the 1973 prescription from defendant George Ginsburg, who owned and operated defendant Nedco Pharmacy, Inc., and from defendant Joseph McTague, who purchased Nedco in 1977.

Plaintiff alleges that she was taking one shot every hour prior to her admission at Ellis Hospital in the City of Schenectady in 1980. It was then that plaintiff realized that she had become addicted to Talwin. Her admitting neurologist, Dr. Mindy Sanders, consulted defendant Dr. James Cunningham, who prescribed Talwin in decreasing doses over the period of her hospitalization. However, when plaintiff left the hospital for a planned trip to Florida, Cunningham issued plaintiff a prescription for Talwin and Dramamine that would last until she arrived in Florida. Although Cunningham claims he did not mark the prescription refillable, this prescription and Hinse's 1973 prescription were refilled several times after plaintiff's discharge from the hospital and she once again increased her Talwin intake. In April 1981, plaintiff sought medical assistance and was successfully treated at Gateway Rehabilitation Clinic in Pennsylvania for her Talwin addiction.

On July 13, 1981, plaintiff commenced an action against Sterling and Winthrop (hereinafter defendants), as well as Hinse, Cunningham, Nedco and its various owners, for damages incurred as a result of her addiction to Talwin. Plaintiff's claim against defendants is based on negligence in failing to adequately warn, strict liability in the manufacturing and marketing of Talwin, and breach of implied warranty. After Hinse successfully moved to have the complaint against her dismissed as barred by the Statute of Limitations (114 AD2d 708, *lv dismissed* 68 NY2d 641), defendants moved for summary judgment. Supreme Court granted the motion, holding the complaint as against them was time barred and that any inadequacy in the warning was not the proximate cause of plaintiff's injuries. All cross claims against defendants were also dismissed. However, Supreme Court granted reargument and upon reargument denied the motion, finding that questions of fact existed as to timeliness of the actions and the inadequacy of the warning provided by defendants. This appeal by defendants ensued.

■ Relying on the informed intermediary doctrine which extends the drug manufacturer's duty to warn only to the

physician who is the informed intermediary between the manufacturer and the patient *(see, Cooley v Carter-Wallace Inc.,* 102 AD2d 642, 644-645; *Wolfgruber v Upjohn Co.,* 72 AD2d 59, 60-61, *affd* 52 NY2d 768), defendants assert that since their duty to warn extends only to the physician, their duty to warn ended upon Hinse's termination of her treatment of plaintiff, which was judicially determined to be in 1977. Thus, they conclude, plaintiff's action is time barred. We disagree. First, the informed intermediary doctrine is a substantive legal rule which pertains to the liability of the drug manufacturer and to the substance of the warning itself, and has nothing to do with the procedural question of when a patient's cause of action accrues. While the drug manufacturer's duty under the doctrine is to warn the physician, the manufacturer is directly liable to the patient for a breach of such duty *(see, Schenebeck v Sterling Drug,* 423 F2d 919, 922). Since the manufacturer is liable ultimately to the patient, the manufacturer's duty extends to the members of the medical profession upon whom the patient relied. Therefore, defendants' analysis fails to take into account the treatment of plaintiff by Cunningham.

Further, under CPLR 214 (5), a cause of action arising out of an injection, ingestion or inhalation of a chemical substance accrues on the date such substance is introduced into the body. When this occurs over a period of time, accrual occurs on the date of the last exposure to the substance *(Harrell v Koppers Co.,* 118 AD2d 682, 683-685; *see, Ward v Desachem Co.,* 771 F2d 663, 667). Since plaintiff's last exposure occurred around March 2, 1981, her cause of action accrued at that time regardless of the fact that plaintiff discovered her injury prior to that time *(see, Bradley v Burroughs Wellcome Co.,* 116 AD2d 548). Also, since it appears that plaintiff is claiming that it was the cumulative effect of the injections that caused her to become addicted to Talwin and caused the injuries to her skin, the injuries resulting from injections received prior to March 2, 1981 cannot be resolved as being barred by the Statute of Limitations on a motion for summary judgment *(see Aranoff v Winthrop Labs.,* 102 AD2d 736).

■ We are also of the view that questions of fact exist regarding the adequacy of the warning which defendants issued with the drug Talwin so as to preclude the granting of summary judgment dismissing plaintiff's negligence action. This would also be true with respect to plaintiff's actions in

products liability and implied warranty since those actions are analytically dependent upon the negligence action.

An ethical drug manufacturer must make timely and adequate warnings to the medical profession of any dangers inherent in its drugs which it knew or should have known to exist *(Eiser v Feldman,* 123 AD2d 583). The duty to warn is a continuing one requiring the drug manufacturer to keep abreast of recent research and reaction reports *(Baker v St. Agnes Hosp.,* 70 AD2d 400, 406). Accordingly, the adequacy of the warnings herein depends upon the actual and constructive knowledge defendants possessed before and during the time plaintiff was exposed to Talwin.

Here, plaintiff submitted testimony of Dr. Arthur Keats, who conducted premarketing studies of Talwin on behalf of defendants in connection with another trial. Keats stated at that trial that there is a "tremendous" number of people who do develop a Talwin addiction. Plaintiff further claims that despite their knowledge of Talwin's addictive qualities, defendants' sales representatives were trained to assure doctors that Talwin was nonaddictive. Articles published on the effects of Talwin were also offered to show that defendants were aware of the dangers inherent in Talwin. Plaintiff therefore claims that if defendants had timely and responsibly disclosed all the information they possessed concerning Talwin's addictive potential, she would not have received the number of injections she received, would not have been issued the number of refillable prescriptions she obtained in August and October 1980, and would not have been allowed to self-administer the drug. Plaintiff further alleges that Nedco and Hinse would not have issued improperly sized needles and overdispensed Talwin.

We, therefore, conclude that plaintiff has shown that the adequacy of defendants' warnings presents questions of fact to be determined at trial. It is for the jury to determine whether defendants possessed actual or constructive knowledge of Talwin's potential to produce harmful side effects and, if so, at what time defendants possessed the same. Also, the jury must determine whether defendants failed to timely disclose the information they possessed and whether such failure was the proximate cause of plaintiff's injuries. However, we note that defendants are not foreclosed from presenting evidence of plaintiff's contributory negligence *(see, Codling v Paglia,* 32 NY2d 330, 343; *see also, Lindsay v Ortho Pharm. Corp.,* 637 F2d 87, 94).

We conclude with two comments. Since the motion for summary judgment was properly denied, it follows that the motion to dismiss the third-party claims was properly denied. Finally, we do not feel that plaintiff's claim for punitive damages should be dismissed (see, 100 AD2d 702), because whether defendants' conduct constituted reckless disregard of the public's safety is essentially a jury question which can only be answered after the issue of the adequacy of the warning is resolved.

MAIN, CASEY, MIKOLL and LEVINE, JJ., concur.

Order affirmed, with costs.