Jack P. **RACICH** and Gertrude C. **Racich**, Plaintiffs–Appellees,

v.

The **CELOTEX CORPORATION**, Defendant–Appellant.

No. 20, Docket 89–7164.

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 1989.

Decided Oct. 5, 1989.

Andrew T. Berry, New York City (McCarter & English, Kalb Friedman Siegelbaum & Moran, New York City, Andrew Constantine II, Joel Slawotsky, of counsel), for defendant-appellant.

Richard P. Weisbeck, Jr., Buffalo, N.Y. (Lipsitz, Green, Fahringer, Roll, Schuller & James, of counsel), for plaintiffs-appellees.

Before FEINBERG and NEWMAN, Circuit Judges and MISHLER, District Judge.*

FEINBERG, Circuit Judge:

The Celotex Corporation appeals from a judgment against it in favor of plaintiff Jack P. Racich, after a jury trial before Eugene H. Nickerson, J., in the United States District Court for the Eastern District of New York, and from an order denying Celotex's motion for judgment notwithstanding the verdict. The jury awarded plaintiff both compensatory damages and punitive damages but denied recovery for co-plaintiff Gertrude C. Racich, wife of Jack. (For convenience, we will refer hereafter only to Jack P. Racich as plaintiff.) Appellant Celotex contends that the trial court erred in allowing punitive damages to be awarded and that the entire verdict was tainted by prejudicial closing remarks of plaintiff's trial counsel. Appellant asks us to dismiss plaintiff's punitive damages award, and order a new trial.

Background

This appeal arises out of an asbestos-related personal injury action. The action is part of the national "asbestos scene, an unparalleled situation in American tort law," in which many thousands of personal injury claims have been filed "against asbestos manufacturers and producers." *In re School Asbestos Litigation,* 789 F.2d 996, 1000 (3d Cir.), cert. denied, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). See also *Jackson v. Johns–Manville Sales Corp.,* 750 F.2d 1314 app. at 1338–39 (5th Cir.1985) (in banc), on rehearing, 781 F.2d 394 (5th Cir.), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). Plaintiff Racich has been exposed to asbestos products for almost his entire adult life, from 1923 to 1974. During this period, he worked with asbestos-containing products manufactured by Philip Carey Corporation (Carey). In 1972, appellant Celotex purchased Carey and assumed all of its ordinary liabilities.

As a result of this exposure, plaintiff became ill with asbestosis, a progressive and irreversible pulmonary disease caused by inhaling asbestos fibers. An asbestosis victim experiences shortness of breath even during simple daily activities. Also, an asbestosis victim may suffer from heart disorder.

* Honorable Jacob Mishler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

In March 1987, plaintiff instituted this diversity action in the Eastern District against 19 manufacturers and suppliers of products and materials containing asbestos. Celotex was named individually and as successor in interest to Carey. The complaint against Celotex alleged, among other things, that Celotex had breached its duty to plaintiff by failing to warn of the known dangers associated with its asbestos-containing products and by willfully and intentionally refusing to disclose these known hazards.

All of the many asbestos cases in the Eastern and Southern Districts were assigned for pretrial purposes to Judge Charles P. Sifton. In an omnibus motion before Judge Sifton, defendants raised issues relating to all the cases and sought, among other things, dismissal of all plaintiffs' requests for punitive damages. Judge Sifton denied the motion. In September 1988, this case was assigned to Judge Nickerson, and was tried shortly thereafter. At the time of the jury verdict, Celotex was the only remaining defendant in this case.

At trial, Celotex moved for a directed verdict with respect to punitive damages on the grounds that plaintiff had not shown that Celotex had assumed liability for punitive damages when it assumed the ordinary liabilities of Carey or that Celotex had ratified the acts of Carey. Counsel for Celotex also stated on the issue of punitive damages that "defendant would refer your Honor to the brief previously filed by the Asbestos Claims Facility," a group of asbestos claims defendants of which Celotex was a member. That brief included a number of arguments as to why punitive damages were inappropriate in mass tort litigation. Judge Nickerson denied the motion, and the jury determined plaintiff's compensatory damages to be $165,000, which was then subject to a 10 percent reduction for his negligence (also found by the jury). In addition, the jury awarded $100,000 in punitive damages against Celotex. Celotex then moved for judgment notwithstanding the verdict dismissing the claim for puni-

tive damages, on the same grounds of no successor liability and the incorporated arguments of the Asbestos Claims Facility defendants.[1] In a brief memorandum opinion, Judge Nickerson denied the motion. This appeal followed.

### Discussion

A. *Arguments based upon New York statutory and common law*

■ The parties agree that New York law applies to this common-law action based upon diversity jurisdiction. Appellant's first argument to us is that plaintiff's suit is untimely, a contention that requires construction of New York's one-year revival statute. 1986 N.Y.Laws, ch. 682, § 4 (McKinney 1986). That statute, which became effective on July 30, 1986, was enacted in response to decisions of the New York Court of Appeals, which held that the statute of limitations in an action based upon exposure to a toxic substance runs from the date of the last exposure, not from the date on which the disease caused by the toxic substance was, or could have been, discovered. See, e.g., *Steinhardt v. Johns–Manville Corp.*, 54 N.Y.2d 1008, 1010, 446 N.Y.S.2d 244, 430 N.E.2d 1297 (1981), cert. denied, 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982). The statute provides, in relevant part, that:

> Notwithstanding any other provision of law ... every action for personal injury, injury to property or death caused by the latent effects of exposure to ... asbestos ... which is barred as of the effective date of this act or which was dismissed prior to the effective date of this act solely because the applicable period of limitations has or had expired is hereby revived and an action thereon may be commenced provided such action is commenced within one year from the effective date of this act....

Celotex contends that plaintiff's claim for punitive damages is not permitted under the revival statute.

Celotex offers a number of arguments to support this position. Citing the New York

---

**1.** The claim that there is no successor liability has been dropped on appeal.

Court of Appeals decision in *Sharapata v. Town of Islip*, 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104 (1982), Celotex claims that absent an explicit provision for the recovery of punitive damages, the plain language of the revival statute should not be construed to grant such a right. Moreover, appellant argues, a comparison of the revival statute with other statutorily-created causes of action shows that when the legislature wanted to create a right to recover punitive damages, it knew how to do so. See, e.g., N.Y.Gen.Oblig.Law § 11–101(1) (McKinney 1989). In the case of the revival statute, appellant maintains, the legislative history makes no reference to punitive damages and the Governor's Approval Memorandum mentions only the statute's compensatory purpose. 1986 N.Y.Laws, ch. 682, at 3182 (McKinney 1986).

We do not find these arguments persuasive. Appellant's reliance on *Sharapata* is misplaced. In that case, the Court of Appeals held that the section of the Court of Claims Act by which New York State waived its sovereign immunity from liability did not permit punitive damages against a local municipality. The holding was based on the assumption that "a statute in derogation of the sovereignty of a State must be strictly construed." 56 N.Y.2d at 336, 452 N.Y.S.2d 347, 437 N.E.2d 1104. No such assumption operates here. Also, unlike the statutorily-created causes of actions cited by appellant, the statute at issue here revived, rather than created, certain categories of common-law tort actions, and thus merely eliminated a statute of limitations defense. See Governor's Approval Memorandum, at 3183 ("[T]his measure remedies the injustices suffered by all of the currently known categories of victims of exposure to toxic or harmful substances.... This bill revives their claims for a one year period and enables them to have their day in court."). The expiration of the statute of limitations prior to the enactment of the revival statute did not eliminate plaintiff's cause of action, but merely suspended the court's ability to grant any remedy. See *Hymowitz v. Eli Lilly and Co.*, 136 Misc.2d 482, 485, 518 N.Y.S.2d 996 (N.Y.Sup.Ct.1987), aff'd, 139 A.D.2d 437, 526 N.Y.S.2d 922 (1st Dept. 1988), aff'd, 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989). Since a common-law tort action for personal injury by definition includes the element of damages, see Prosser & Keeton on The Law of Torts § 30, at 165 (5th ed. 1984); 36 N.Y.Jur.2d, Damages § 174 (1984), including punitive damages when factually appropriate, see, e.g., *Sharapata*, 56 N.Y.2d at 335, 452 N.Y.S.2d 347, 437 N.E.2d 1104, the omission in the revival statute and the legislative silence with respect to punitive damages do not preclude such a recovery.

Appellant next argues that punitive damages are inappropriate as a matter of New York law and public policy. New York courts generally have recognized that punitive damages differ from compensatory damages in purpose and nature. *Sharapata*, 56 N.Y.2d at 335, 452 N.Y.S.2d 347, 437 N.E.2d 1104. Whereas compensatory damages are designed to "have the wrongdoer make the victim whole," commensurate with the loss or injury actually sustained, punitive damages are intended "to punish the tort-feasor for his conduct and to deter him and others like him from similar action in the future." *Id.* (citation omitted). Appellant argues that punitive damages are inappropriate because there is now "no ongoing conduct by Celotex or any other manufacturer of an asbestos-containing product" to be deterred.

Appellant, however, fails to cite any New York authority to support its narrow view of the purposes of punitive damages. Appellant relies on our decision in *Roginsky v. Richardson–Merrell, Inc.*, 378 F.2d 832 (2d Cir.1967) (Friendly, J.), in support of its contention that public policy counsels against an award of punitive damages in mass tort litigation. In *Roginsky*, we did observe that we had "the gravest difficulty in perceiving how claims for punitive damages in such a multiplicity of actions throughout the nation can be so administered as to avoid overkill," id. at 839, but we went on to say that "the New York cases afford no basis for our predicting that the Court of Appeals would adopt a

rule disallowing punitive damages in a case such as this, and the *Erie* doctrine wisely prevents our engaging in such extensive law-making on local tort liability...." Id. at 841. See also *Morrissey v. National Maritime Union,* 544 F.2d 19, 34 n. 7 (2d Cir.1976) (Friendly, J.) ("The [district] court was in error insofar as it read our decision in *Roginsky v. Richardson–Merrell, Inc.,* as having reduced an award of $100,000 punitive damages in a product liability diversity case because of the probability of multiple awards." (citation omitted)).

Moreover, under New York law, the decision to award punitive damages and their amount are questions which primarily reside in the jury's discretion. *Nardelli v. Stamberg,* 44 N.Y.2d 500, 503, 406 N.Y. S.2d 443, 377 N.E.2d 975 (1978). Furthermore, there is some indication that the New York courts view punitive damages as having a purpose beyond punishment, "afford[ing] the injured party a personal monetary recovery over and above compensatory loss." *Wittman v. Gilson,* 70 N.Y.2d 970, 972, 525 N.Y.S.2d 795, 520 N.E.2d 514 (1988).

Finally, appellant argues that punitive damages are inappropriate in product liability litigation because such damages depend upon the deliberately wanton nature of the act giving rise to the cause of action while an action brought on a theory of strict tort liability is based on the condition of the product, not the nature of the act. However, Judge Nickerson charged the jury that it might, but was not required to, grant punitive damages only if it found "that it was clearly established that the acts of defendant causing the injury were wanton or reckless." Therefore, the award of punitive damages was based on the nature of Celotex's conduct. In any event, the law of New York, which governs, allows recovery of punitive damages in product liability cases like this one. See *Bikowicz v. Nedco Pharmacy,* 130 A.D.2d 89, 94, 517 N.Y.S.2d 829 (3rd Dept.1987).

Accordingly, we see no basis under New York statutory or common law for dismissing the award of punitive damages.

B. *Constitutional arguments*

■ Appellant also challenges the award of punitive damages on constitutional grounds, principally federal. Appellant contends that because such damages are, in fact, a penalty, certain protections mandated by the Fifth, Eighth and Fourteenth Amendments are implicated. The claims regarding the Eighth Amendment were made in the briefs to us prior to the Supreme Court's decision in *Browning–Ferris Inds. v. Kelco Disposal,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). In that case, which was not part of a mass tort litigation, the Court held that the Excessive Fines Clause of the Eighth Amendment does not apply to punitive damages awards in cases between private litigants. Appellant conceded at oral argument that *Kelco* effectively disposed of its claim that the Eighth Amendment's Excessive Fines Clause prohibits the imposition of punitive damages in the product liability context.

Appellant also argues in passing that the imposition of punitive damages here offends the Cruel and Unusual Punishments Clause of the Eighth Amendment. However, the Court's decision in *Kelco* strongly suggests that this clause also would not apply to this civil award of punitive damages. See id., 109 S.Ct. at 2914 n. 3. The same observation applies to appellant's claim that the sanction of punitive damages requires such constitutional procedural safeguards, applicable in criminal cases, as protections against double jeopardy and self-incrimination, proof beyond a reasonable doubt, the presumption of innocence and the right to a unanimous verdict of 12 jurors. See *United States v. Halper,* —— U.S. ——, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989) ("The protections of the Double Jeopardy Clause are not triggered by litigation between private parties.").[2]

2. Appellant also argues in cursory fashion that the multiple imposition of punitive damages is constitutionally infirm as an excessive fine or as double jeopardy under the New York Constitution. N.Y. Const. art. 1, § 6. These claims are no more substantial than the federal claims rejected above.

■ Next, appellant raises a substantive due process point, claiming that multiple imposition of punitive damages against Celotex, without limit, for the same course of conduct offends the notion of fundamental fairness inherent in due process. We are told that Celotex has been punished enough after 15 years of litigation, the award of 10 separate jury verdicts against it totalling almost four million dollars, and the bankruptcy of 10 other companies, also sued as defendants, in the past decade, leaving Celotex to shoulder their share of compensatory damages.

We agree that the multiple imposition of punitive damages for the same course of conduct may raise serious constitutional concerns, in the absence of any limiting principle. See Jeffries, A Comment on the Constitutionality of Punitive Damages, 72 Va.L.Rev. 139, 147 (1986) (requirement of fundamental fairness inherent in concept of due process cannot be construed to permit unlimited multiple awards of punitive damages for single course of conduct); Owen, Problems in Assessing Punitive Damages Against Manufacturers of Defective Products, 49 U.Chi.L.Rev. 1, 50 (1982) (increased judicial control may be necessary to prevent violation of corporation's due process rights through over-punishment from multiple awards for single product mistake).

We need not reach this question, however, since Celotex did not preserve it for appellate review. The record before us of what transpired in the district court is not as clear as it should be, but it appears that appellant neither adequately raised this legal argument nor made a sufficient record on it in the trial court. We have carefully examined the trial brief submitted collectively on behalf of the Asbestos Claims Facility defendants and Celotex's memorandum of law in support of its motion before Judge Nickerson for judgment notwithstanding the verdict, which incorporated the claims made in the trial brief. There are sections devoted to constitutional arguments in these briefs, but neither makes the precise due process claim now pressed upon us.

Moreover, even if we assume that appellant raised the point in the district court, it did not make an adequate record there to support it. On appellant's theory, whatever limits on punitive damages might inhere in the Due Process Clause would depend on consideration of the amount and circumstances of prior punitive damage awards. However, appellant apparently failed to bring to the district court's attention the existence and details of such awards against it. At oral argument, when we questioned the adequacy of the record in this respect, appellant asked us to take judicial notice of additional punitive damages awarded against it since September 1988. Regardless of whether this court could, or should, follow that course, it would not cure appellant's failure to raise the issue adequately in the trial court.

■ Appellant also argues that the standard governing the award of punitive damages is constitutionally void for vagueness. The indefinite phrases that will support such an award, appellant contends, do not give fair warning regarding prohibited conduct, and fail properly to confine the discretion of judges and juries in the absence of some sort of statutory limit. In this case, the jury was charged that it might, but was not required to, allow plaintiff punitive damages if it found that it was clearly established that the acts of the defendant were "wanton or reckless." These concepts were defined in apparently traditional terms under New York law, or at least there is no claim to the contrary. Rather, the claim is, as counsel for appellant made clear at oral argument, that the jury was given constitutionally deficient guidance.

The Supreme Court in *Kelco* expressly refused to consider what is essentially the same question, "whether due process acts as a check on undue jury discretion to award punitive damages in the absence of any express statutory limit," 109 S.Ct. at 2921, in light of the failure of petitioners in that case to raise the argument in the courts below. But the opinions in *Kelco* make clear that the question is a substantial one. Id. at 2921 n. 23. See also the opinions in *Kelco* of Justice Brennan

(joined by Justice Marshall), id. at 2923, and Justice O'Connor (joined by Justice Stevens), id. at 2924, and *Bankers Life and Casualty Co.*, 486 U.S. 71, 108 S.Ct. 1645, 1654, 100 L.Ed.2d 62 (1988) (O'Connor, J., with whom Scalia, J., joins, concurring in part and concurring in the judgment). Nevertheless, we do not write upon a clean slate in this court. In *Roginsky*, defendant had likewise complained that an "award of punitive damages, 'unless restricted to fixed and measurable amounts,' violates due process." 378 F.2d at 835. While we did not explicitly reject that claim, it is quite apparent that we did not accept it, believing that the only course open to us was "the more modest" task of "assessing the sufficiency of the evidence within the framework" of New York law. Id. at 841. On the latter basis, we set aside the award on the ground that the evidence was insufficient to submit the punitive damages issue to the jury. Id. at 841–42. Moreover, we are here asked to hold, in effect, that the common-law standards applied by the courts of New York for imposition of punitive damages are unconstitutional, and that our own cases applying that law were in error. See, e.g., *Roy Export Co. Establishment v. Columbia Broadcasting System*, 672 F.2d 1095, 1106 (2d Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). This would be a far-reaching holding indeed, particularly in the context of mass tort litigation that suggests the need for a uniform, national rule on the issue. Under all the circumstances, we believe that such a step, if it is to be taken (and we express no view as to that), is best left for Congress or for higher judicial authority. Cf. *Juzwin v. Amtorg Trading Corp.*, 718 F.Supp. 1233, 1235 (D.N.J.1989).

C. *Objection to plaintiff's summation*

██ Finally, appellant contends that the entire jury award was tainted by the improper closing remarks of plaintiff's trial counsel, which, it maintains, characterized Celotex as an indifferent corporate entity

performing clinical studies on its workers, and labeled its conduct "greedy," "callous" and "criminal." While appellant concedes that it did not object to most of the remarks now challenged, it nevertheless argues that these remarks were so inflammatory as to constitute plain error, thus allowing Celotex to raise the issue on appeal. We do not agree. Moreover, the jury's finding that plaintiff bore 10 percent of the responsibility for his injuries does not suggest a jury swept away by passion.

For the reasons set forth above, the judgment of the district court is affirmed.[3]

---

**3.** Appellee's request for sanctions against appellant, based upon the latter's motion to supplement the record in this court, is denied.