901 F.2d 277
 Prod.Liab.Rep.(CCH)P 12,442
Helen E. SIMPSON, Individually and as Executrix of the
Estate of David Simpson, deceased, Plaintiff-Appellee,
v.
PITTSBURGH CORNING CORPORATION, Defendant-Appellant,
Eagle-Picher Industries, Inc., Owens-Corning Fiberglas
Corp., Owens-Illinois, Inc., The Celotex Corporation,
Intergy, Inc., Raymark Industries, Inc., a/k/a
Raybestos-Manhattan, Inc., Amchem Products, Inc., Defendants.
 No. 465, Docket 89-7742.
 United States Court of Appeals,
 Second Circuit.
Argued Dec. 8, 1989.
Decided April 16, 1990.
 
 Frank H. Santoro, Hartford, Conn. (Frederick B. Tedford, Frank M. D'Addabbo, and Wendy W. Wanchak, Danaher, Tedford, Lagnese & Neal, Hartford, Conn., on the brief), for defendant-appellant.
 Stephen G. Schwarz, Rochester, N.Y. (Faraci, Guadagnino, Lange & Johns, Rochester, N.Y., on the brief), for plaintiff-appellee.
 Charles E. Dorkey III and Thomas I. Sheridan, III, Richards & O'Neil, New York City, submitted an amicus curiae brief for T & N plc.
 Before KAUFMAN, NEWMAN and WINTER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 In the aftermath of the Supreme Court's suggestion that the imposition of some punitive damages awards may violate the Due Process Clause, see Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., --- U.S. ----, 109 S.Ct. 2909, 2921 & n. 23, 106 L.Ed.2d 219 (1989), we have repeatedly been asked to rule that successive punitive damages awards in asbestos cases are unconstitutional. See, e.g., Johnson v. Celotex Corp., 899 F.2d 1281 (2d Cir.1990); Racich v. Celotex Corp., 887 F.2d 393, 397-99 (2d Cir.1989). Thus far, we have declined to adjudicate the due process claim because the defendant asserting the claim on appeal has failed to make an adequate record in the trial court to support it. This case is another example of that pattern. Pittsburgh Corning Corporation appeals from the July 6, 1989, judgment of the District Court for the Western District of New York (Michael J. Telesca, Chief Judge) awarding Helen E. Simpson, individually and as executrix of her husband's estate, $1,277,000 in compensatory damages and $2,300,000 in punitive damages after a jury trial. Simpson alleged that her husband died of asbestos-related injuries. We affirm.
 
 Background
 
 2
 We need set forth only those facts pertinent to the challenges to the punitive damages award, essentially a claim that any such award, rendered after prior awards, was barred by the substantive component of the Due Process Clause and claims that the award in this case denied appellant procedural due process. Plaintiff's decedent, David Simpson, was employed at Rochester Gas and Electric Company from 1957 to 1988. His primary duties involved working on the steam piping system. This work brought him into extensive contact with asbestos pipe insulation materials. One of the three insulation materials used by Rochester Gas and Electric was "Unibestos," a thermal insulation pipe covering manufactured by appellant from 1962 until 1972. Unibestos contained amosite, one of several different types of asbestos fibers. In 1986, David Simpson was diagnosed as suffering from mesothelioma, a lung disease from which he died two years later. Substantial evidence attributed his illness and death to asbestos exposure. The evidence also disclosed that Pittsburgh Corning became aware of asbestos health risks as early as 1962 and deliberately delayed warning customers and users of these risks for various reasons, including concern about weakening its defense of a lawsuit and its position in collective bargaining with its employees.
 
 
 3
 In answer to special interrogatories, the jury found that appellant's asbestos product was unsafe, that appellant breached a duty to warn users of dangers that became known after the product was sold, and that exposure to the product was the proximate cause of David Simpson's illness and death. The jury assessed compensatory damages of $27,000 for medical and burial expenses, $525,000 for pain and suffering, $500,000 for lost future earnings, and $225,000 for Helen Simpson's loss of consortium, for a total of $1,277,000. The jury also determined that all four of the co-defendants, each of which had settled before the verdict, were also responsible for Simpson's death. In assigning shares of responsibility to the five named defendants, the jury found appellant liable for 45 percent of the compensatory damages. The punitive damages award against appellant was $2,300,000.
 
 
 4
 The circumstances concerning appellant's substantive and procedural challenges to punitive damages are as follows. In its answer to the complaint, appellant disputed plaintiff's claim for punitive damages with only the general assertion that such damages were not "recoverable or warranted." Thereafter liaison counsel for all the defendants broached the issue of bifurcation or trifurcation at a conference with the District Judge. Appellant makes no claim that the Judge was then provided with any specific basis for separation of issues, such as a party's intention to introduce evidence of its net worth or of prior punitive damages awards in an effort to resist a subsequent punitive award or hold down its amount.
 
 
 5
 The day before the trial began, counsel for appellant formally moved for bifurcation, requesting that the jury consider the amount of punitive damages only after it had decided liability for such damages. This request was not accompanied by any indication that appellant planned to introduce evidence of its net worth or of prior punitive damages awards. The request was denied. After the plaintiff had presented her case, appellant sought reconsideration of its request for bifurcation. On this occasion, appellant indicated for the first time its intention to present evidence of prior punitive awards in the event bifurcation was ordered. However, no detail was supplied concerning the number of such awards, their amount, or the similarity between the facts underlying the prior awards and the facts underlying plaintiff's claim. Reconsideration was denied.
 
 
 6
 After the jury returned its verdict, appellant moved to set it aside and, for the first time in the litigation, supplied some detail supporting its due process challenge to a punitive damages award. An affidavit of its vice-president and general counsel reported that as of June 1, 1989, more than 78,000 cases had been filed against Pittsburgh Corning seeking damages for asbestos injuries, that punitive damages had been sought in most of these cases, and that the company had spent "millions of dollars in indemnity and defense in connection with the disposition of more than 29,000 cases of alleged asbestos disease." The affidavit cited only two instances in which appellant had been found liable for punitive damages in connection with asbestos claims: a 1983 judgment in the Southern District of Texas awarding $300,000 in punitive damages and a 1988 judgment in a West Virginia state court awarding $75,000 in punitive damages. The affidavit stated that both judgments had been "satisfied," a representation that left an ambiguity as to whether the amounts awarded had been paid or whether post-trial settlements had occurred. No details concerning the facts of these two cases were reported.
 
 Discussion
 I. Substantive Due Process
 
 7
 Appellant contends that the $2.3 million punitive damages award in this case deprives it of property in violation of the substantive component of the Due Process Clause. In advancing this argument, appellant is not inviting us to decide the question raised but left unresolved in Browning-Ferris--namely, whether the size of a particular punitive damages award exceeds due process limitations. Instead, appellant invites us to rule that the Due Process Clause precludes any punitive damages award rendered after a party has previously been assessed punitive damages for the same conduct or, alternatively, that a successive punitive damages award is barred after the aggregate of prior awards for the same conduct has reached the maximum amount tolerable under that clause.
 
 
 8
 These alternative contentions proceed from rather different implied premises. The first contention, which might be called the "single punitive award," assumes that the fact-finder making the first award understood its assignment to be the selection of that sum of money appropriate to punish the tort-feasor for the full extent of its wrongful conduct, not merely a sum appropriate as punishment for the injuries to the plaintiffs in the lawsuit. It was in recognition that this premise will not necessarily be valid that Judge Sarokin modified his pioneering ruling in Juzwin v. Amtorg Trading Corp., 705 F.Supp. 1053 (D.N.J.1989), which had allowed a defendant to strike a punitive damages claim upon proof that punitive damages had previously been imposed for the same conduct. On reconsideration, Judge Sarokin conditioned his ruling upon a demonstration that the prior award had been made after a complete hearing, preceded by investigation of the full scope of the defendant's wrongful conduct, with an opportunity for participation by similarly situated plaintiffs and with an instruction to the jury that its award will be the only punitive damages rendered for such conduct. Juzwin v. Amtorg Trading Corp., 718 F.Supp. 1233, 1235 (D.N.J.1989) (Juzwin II ).
 
 
 9
 The second contention, which might be called the "aggregate punitive award," assumes that the juries making prior punitive awards functioned in the traditional manner, confining their consideration of the appropriate punishment to the injury inflicted upon the plaintiffs in each particular litigation. This contention further assumes that the judge asked to rule that the aggregate of prior awards has reached the maximum amount tolerable under the Due Process Clause will be provided with a factual basis sufficient for evaluating the entire scope of the defendant's wrongful conduct, a basis comparable to what Juzwin II requires be placed before the first jury in order to forestall a second award. Only with such factual information can the judge determine that the aggregate of prior awards punishes the entirety of the wrongful conduct to the limit of due process.
 
 
 10
 Of course the "single punitive award" and the "aggregate punitive award" approaches share a common premise that the judge asked to bar punitive damages on due process grounds, either because the first award was comprehensive or because the aggregate of prior awards has reached the due process limit, has an adequate factual basis for determining that the wrongful conduct sought to be punished is the same as the conduct previously punished.
 
 
 11
 In the pending case, the record is insufficient to support a due process ruling on either of the theories we have outlined. As to the single award approach, appellant made no showing that the jury in either of the two prior asbestos cases where punitive damages were awarded against Pittsburgh Corning had a complete record of the full extent of appellant's wrongful conduct in failing to warn all users of the dangers of its asbestos products, nor that either jury was instructed to return a punitive award appropriate as punishment for the totality of such misconduct. As to the aggregate award approach, appellant made no showing that the total of the two awards, $375,000, is even close to whatever limit due process might impose on the total punitive damages that may be assessed against Pittsburgh Corning for its misconduct with respect to asbestos warnings.
 
 
 12
 Moreover, as to both theories, there is an entirely insufficient basis for concluding that the misconduct involving David Simpson is the same misconduct that occurred in the two prior cases. We do not agree with appellant's assumption that all asbestos cases in which Pittsburgh Corning is a defendant may be lumped together for the purpose of testing punitive awards against the limits of due process. The wrongfulness of a defendant's conduct will normally be subject to varying assessments depending on the degree to which the dangers of its product were known at a particular time and the deliberateness of its conduct in declining to warn or even concealing dangers of which it was aware. At some point, one comprehensive record or a collection of more particularized records can be expected to disclose the full extent of wrongful conduct, but appellant has done no more than show that in two asbestos cases decided five years apart, it was obliged to pay punitive damages.
 
 
 13
 Beyond the two prior cases brought to the attention of the District Court, appellant alleged generally that it "has expended millions of dollars in indemnity and defense in connection with the disposition of more than 29,000 cases of alleged asbestos disease." Since only two punitive awards are reported, we may conclude that these "millions" were spent for compensatory damages awards, attorney's fees, and settlements. Compensatory damages and the fees incurred in resisting them, though doubtless exerting some deterrent effect on a tort-feasor, cannot be aggregated to show that multiple punitive damages awards are unconstitutional. Perhaps some portion of the sums paid in settlements reflect an anticipation of the likelihood and extent of punitive damages that might have been awarded, but estimates of such amounts would be too speculative a basis for a constitutional ruling. Moreover, it is far from clear that sums paid in private settlements may validly be counted in determining when state-compelled punitive damages awards exceed the limits of the Fourteenth Amendment.
 
 
 14
 In Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2d Cir.1967), Judge Friendly observed that "multiple punitive awards running into the hundreds may not add up to a denial of due process," id. at 840 (emphasis added), a comment that appears to use the underscored words in the sense of "might not," rather than "should not," much less "does not." In any event, Roginsky did not decide whether or in what circumstances multiple punitive awards violate due process since in that case the punitive award was vacated for lack of evidence sufficient to meet the requisite state law standard. In more recent encounters with the issue, we have concluded that the substantive due process claim was neither adequately raised, Racich v. Celotex Corp., 887 F.2d at 398, nor factually supported in the district court, Johnson v. Celotex Corp., 899 F.2d at 1288; Racich v. Celotex Corp., 887 F.2d at 398. The absence of an adequate record similarly defeats the claim in this case.
 
 II. Procedural Due Process
 
 15
 Apart from its claim to substantive due process immunity from any punitive damages award because of prior awards in asbestos cases, appellant challenges the award in this case essentially on procedural due process grounds. It asserts that the award was contrary to the requirements of fundamental fairness because inadequate standards were given to the jury, the burden of proof should have been "clear and convincing evidence," bifurcation was denied, and the trial judge did not provide "meaningful judicial oversight" of the jury's award.
 
 
 16
 A. Jury Standards. The jury was instructed that punitive damages may be awarded if the defendant's conduct was determined to be "wanton and reckless," which was further explained as "done in such a manner and under such circumstances as to show heedlessness of or utter disregard of the effect upon the rights and safety of others...." This instruction was in substantial conformity with New York practice. See New York Pattern Jury Instructions--Civil 2:278 (2d ed. 1974).
 
 
 17
 Appellant's contention that the Due Process Clause requires more precise and more restrictive standards for the imposition of punitive damages is foreclosed by our decision in Racich v. Celotex Corp., 887 F.2d at 399, where we rejected the same contention.
 
 
 18
 B. Burden of Proof. Appellant acknowledges that the burden of proof under New York law for punitive damages in product liability cases is "preponderance of the evidence," but contends that due process requires use of the higher standard of "clear and convincing evidence." The Supreme Court has ruled that the "clear and convincing" standard is required by the Due Process Clause in some circumstances and has observed that this standard is appropriate for "civil cases involving ... quasi-criminal wrongdoing by the defendant," Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979).
 
 
 19
 We acknowledge the force of the argument that since punitive damages are awarded primarily to punish a defendant for past conduct and to deter it and others from similar conduct in the future, a standard of proof appropriate for "quasi-criminal wrongdoing" should be required. However, though we have not explicitly ruled in the past that a "preponderance" burden of proof satisfies due process, we believe that our toleration of that burden in numerous punitive damages cases makes it inappropriate for us to discard it now on constitutional grounds, just as we declined to abandon traditional formulations of the standards governing punitive damages awards in Racich. If a higher burden of proof is to be required, such a change "is best left for Congress or for higher judicial authority." Racich v. Celotex Corp., 887 F.2d at 399.
 
 
 20
 C. Bifurcation. Appellant makes a strong argument for bifurcation--having the jury determine the amount of punitive damages at a separate stage of the trial after the jury decides whether the defendant is liable for an award of punitive damages. A defendant wishing to minimize the amount of such damages by revealing the punitive damages assessed in prior cases is understandably reluctant to put such evidence before the jury at the point where it is deciding whether the defendant should be found liable at all. Appellant relies on our observation in Smith v. Lightning Bolt Production, Inc., 861 F.2d 363, 374 (2d Cir.1988), that bifurcation of the amount of punitive damages is "the preferred method," and the Appellate Division's view that "the split trial procedure should be used," Rupert v. Sellers, 48 A.D.2d 265, 272, 368 N.Y.S.2d 904, 912 (4th Dep't 1975).
 
 
 21
 Though enlisted to demonstrate the broad support for bifurcation, these citations raise a preliminary issue of whether federal or state law applies. Rule 42(b) of the Federal Rules of Civil Procedure vests discretion in a district court to order a separate trial of an issue for various reasons, including the avoidance of prejudice. In diversity cases, federal procedural rules apply where they "cover[ ] the point in dispute," Hanna v. Plumer, 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965), at least where no conflicting state rule "would substantially affect ... primary decisions respecting human conduct," id. at 475, 85 S.Ct. at 1146 (Harlan, J., concurring), and perhaps where no such state rule serves important state interests, Byrd v. Blue Ridge Cooperative, Inc., 356 U.S. 525, 536-40, 78 S.Ct. 893, 900-02, 2 L.Ed.2d 953 (1958). A rule governing bifurcation is a clear example of a rule of adjudication, with virtually no impact upon primary conduct. Moreover, the preference expressed by the Appellate Division in Rupert cannot be said to implement an important state interest; it is not even clear that the New York courts feel bound to honor the Rupert preference. See Moran v. International Playtex, 103 A.D.2d 375, 377, 480 N.Y.S.2d 6, 8 (2d Dep't 1984).
 
 
 22
 Our approach to the issue as a matter of federal law has been to favor bifurcation of the amount of punitive damages as the "preferred method," Smith v. Lightning Bolt Productions, Inc., 861 F.2d at 374, but to leave the mode of trial ultimately to the discretion of the district judge, Johnson v. Celotex Corp., 899 F.2d at 1289; Getty Petroleum Corp. v. Island Transportation Corp., 862 F.2d 10, 15 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). In the pending case, Chief Judge Telesca acted well within his discretion in denying bifurcation, since the defendant waited until the conclusion of the plaintiff's case to alert the District Judge that it planned to present evidence of prior punitive awards and, even then, made no detailed offer of proof to indicate the need for bifurcation. If denial of bifurcation could ever deny a litigant that fundamental fairness protected by the Due Process Clause, that did not occur in this case.
 
 
 23
 D. Lack of Judicial Oversight. In the trial court, appellant challenged the amount of the jury's punitive award by moving for a new trial or, alternatively, for a remittitur. The motion was denied, and appellant does not contend on appeal that this was error. Nor does appellant ask us to rule that the amount of that award is so excessive as to require reduction. Instead, appellant calls our attention to section 120 of the Model Uniform Products Liability Act, which provides that the jury determines whether to award punitive damages and the judge determines their amount, and suggests that we adopt "some similar standards of post-verdict review." Even if we were disposed to do so, the role of a federal court of appeals in these matters has recently been authoritatively limited to reviewing for abuse of discretion a district court's determination that the verdict "is within the confines set by state law" and "by reference to federal standards developed under Rule 59, [Fed.R.Civ.P.,]" a court's determination of "whether a new trial or remittitur should be ordered." Browning-Ferris Industries of Vermont v. Kelco Disposal, Inc., 109 S.Ct. at 2922.
 
 
 24
 In sum, appellant's contentions, either individually or in combination, do not persuade us to reject the punitive damages award for lack of procedural due process.
 
 III. Exclusion of Johns-Manville
 
 25
 The evidence established that asbestos products manufactured by Johns-Manville Corporation ("Manville") were extensively used at Rochester Gas and Electric during the period of David Simpson's employment. Anticipating this evidence, Pittsburgh Corning had hoped to bring Manville into the litigation either as a defendant or a third-party defendant. That opportunity was barred by Manville's bankruptcy, which resulted in a reorganization plan that channeled asbestos injury claims against Manville to the Asbestos Health Trust, see Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir.1988), and barred litigation against the Trust until July 27, 1989. On April 24, 1989, Pittsburgh Corning moved to continue the trial until after July 27 so that the Manville Trust could be joined as a defendant. The District Court denied this motion, as well as a request to have the Manville Trust added to the listing in the verdict form of companies (all settling co-defendants in this lawsuit) that may have sold unsafe products that injured Simpson.
 
 
 26
 Though the continuance motion raised more significant issues than normally arise when a district court considers the starting date of a trial, the denial of the motion was within the Court's discretion. As the District Judge correctly ruled, Pittsburgh Corning still retains the right to pursue the Manville Trust and, if it can establish liability, obtain contribution. The jury's allocation of responsibility among the companies it was permitted to consider does not preclude a pro rata reduction of the shares the jury assigned, in the event that Manville is subsequently determined to bear responsibility for some proportionate share of plaintiff's damages. Appellant's concerns about the difficulty of obtaining contribution are largely conjectural. The Manville bankruptcy caused many people major difficulties. The District Court was not obliged to make the postponement of this trial an additional consequence.
 
 IV. Revival of Action
 
 27
 Finally, brief attention should be given to the contention of amicus curiae T & N plc, a defendant in numerous pending asbestos injury cases, that the New York statute reviving asbestos injury claims, 1986 N.Y.Laws, ch. 682, Sec. 4 (McKinney 1986), does not apply to punitive damages claims. Acknowledging that we rejected this contention in Racich, amicus invites us to certify the question to the New York Court of Appeals or reconsider Racich. Amicus contends that Racich is contrary to our prior decision in Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966 (2d Cir.1985), a case not cited to the Racich panel. Vuitton construed the treble damages provision of the Trademark Counterfeiting Act of 1984, 15 U.S.C. Sec. 1117(b) (1988), not to be retroactive. Id. at 970-72. Though that ruling indicates that punitive damage provisions should be construed to avoid retroactive application, it does not require exempting punitive damages from a state statute specifically enacted to revive the time-barred damage claims of those who suffered asbestos injuries. The revival statute does not create punitive damages liability for conduct that was immune from such awards at the time the conduct occurred. We adhere to Racich and find the issue sufficiently free from doubt as not to warrant state court certification.
 
 
 28
 The judgment of the District Court is affirmed.